# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 1:15-23-RGA |
| | ) |
| WILMINGTON TRUST CORPORATION, | ) |
| DAVID R. GIBSON, | ) |
| ROBERT V.A. HARRA, | ) |
| WILLIAM NORTH, and | ) |
| KEVYN RAKOWSKI, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT WILMINGTON TRUST CORPORATION'S
## MEMORANDUM IN SUPPORT OF
## <u>MOTION TO COMPEL</u>

Brendan V. Sullivan, Jr.
Barry S. Simon
Margaret A. Keeley
Tobin J. Romero
Lance A. Wade
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel.: (202) 434-5000
bsullivan@wc.com
bsimon@wc.com
mkeeley@wc.com
tromero@wc.com
lwade@wc.com

Lori W. Will (ID No. 5402)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
920 N. King Street
P.O. Box 636
Wilmington, Delaware 19899
Tel.: (302) 651-3000
lori.will@skadden.com

Christopher J. Gunther
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel.: (212) 735-3483
cgunther@skadden.com

*Attorneys for Defendant*
*Wilmington Trust Corporation*

The government concedes that the Office of Inspector General for the Board of Governors of the Federal Reserve System (the "Fed-OIG") "is a part of the prosecution team" authorized by law to "access the materials in the possession" of the Board of Governors of the Federal Reserve System and the Federal Reserve Banks (the "Fed").  Ex. 1 at 4 (Letter from Wolf to Romero, Feb. 29, 2016).  But the government refuses to produce documents located within the Fed that are not in the actual, physical possession of the Fed-OIG because, the government claims, the Fed is not sufficiently allied with the prosecution team.  *See id.*  The government also refuses to produce documents held only by the Securities and Exchange Commission (the "SEC") on the same grounds.  The Court should order the government to expand the scope of its review under Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), to include the files of the Fed and the SEC.

***The Fed.***  The government has an obligation to search the files of the Fed for three independent reasons.

1. The government's line drawing flies in the face of well-established precedent. Actual, physical possession by the prosecution team is not the trigger for the government's disclosure obligations.  Under Rule 16, the government must produce documents in its "possession, custody, or ***control***."  Fed. R. Crim. P. 16(a)(1)(E) (emphasis added).  Control includes "the legal right to obtain required documents on demand."  *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (interpreting "control" in context of Fed. R. Civ. P. 34).  Similarly, "the government's duty to disclose under *Brady* reaches beyond evidence in the prosecutor's actual possession."  *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).  The government must produce information that is "readily available."  *United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991).  The Fed-OIG, which concededly is part of the prosecution

team, is authorized by statute to obtain all documents or other materials located within the Fed. *See* 5 U.S.C. App. 3, § 6(a)(1). For that reason alone, the government's disclosure obligations extend to the Fed's files.

2. The government is wrong when it claims that it is not sufficiently allied with the Fed such that it must search the Fed's files for Rule 16 and *Brady* material. The facts will be explained in greater detail below, but the Fed was both "acting on the government's 'behalf'" and "sharing resources" with the government. *Risha*, 445 F.3d at 304. Most significantly, this Court issued an Order authorizing disclosure of grand jury information to twenty-one named Fed employees as well as staff "of the Federal Reserve Board System and the Federal Reserve Banks of New York and Philadelphia" so that the Fed could "***assist the attorneys for the government in the investigation of these matters***." Ex. 2 at 2-3 (Disclosure Order, August 5, 2013) (emphasis added). Moreover, lawyers from the Fed participated in investigative interviews; and government memoranda refer to a joint investigation with the Fed.

3. The Second Superseding Indictment in this case alleges that the defendants committed crimes by supposedly concealing information from, and lying to, the Fed about the volume of Wilmington Trust's past due loans. *See* Second Superseding Indictment ("SSI") ¶¶ 15-16. The government will be calling Fed witnesses in an effort to substantiate these allegations. "The government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting" the Fed, call Fed employees as its witnesses, and "deny having access" to the Fed's files. *See United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973) (holding that government had obligation to produce documents in possession of U.S. Postal Service under similar circumstances), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984), *cited with approval in Perdomo*, 929 F.2d at 971.

**The SEC.**  The government has an obligation to search the files of the SEC because the government and the SEC had a "close working relationship," *see Risha*, 445 F.3d at 305, in the investigation of this matter.  The SEC and the government conducted dozens of joint interviews—many of which were held at the SEC's offices; the SEC obtained critical documents "on the government's 'behalf,'" *id.* at 304, including all documents from Wilmington Trust's outside auditor KPMG; the SEC provided the government "ready access," *id.*, to its documents; the government and the SEC coordinated the filing of the SEC's civil action against the individual defendants with the announcement of the government's first indictment; and the substance of the allegations in these two related matters is identical.  In addition, the allegations of the Second Superseding Indictment put the actions, knowledge, and beliefs of the SEC at issue, *see* SSI ¶¶ 15-16, such that it would be unfair to shield the SEC's files from discovery.

## BACKGROUND

### I.   THE SECOND SUPERSEDING INDICTMENT

The Second Superseding Indictment purports to charge the defendants with conspiring to defraud the Fed and the SEC, committing securities fraud, and making false statements to the Fed and the SEC, all in connection with Wilmington Trust's reporting of past due loans in its commercial real estate portfolio.  Wilmington Trust submitted periodic reports to the Fed and to the SEC listing the volume of its loans that were past due for 90 days or more.  *See* SSI ¶¶ 8, 12.  Wilmington Trust allegedly was required to include in its past due numbers term loans that had reached maturity, the contractual date for principal repayment.  *See* SSI ¶¶ 14-15.[1]  But Wilmington Trust allegedly had a longstanding practice of not reporting such loans as past due if

---

[1]   Whether a loan should be categorized as "past due" is not a black-and-white analysis, either legally or factually.  The Second Superseding Indictment cites no regulatory authority for the government's interpretation of the reporting requirements.

3

(1) the borrower was current on its interest payments; and (2) Wilmington Trust was in the process of extending the term of the loan, such that principal repayment would be due at a later date. *See* SSI ¶ 15. According to the Second Superseding Indictment, the defendants concealed this "waiver practice" from the Fed and the SEC, and the practice resulted in Wilmington Trust filing reports with the Fed and the SEC that allegedly contained "materially false past due loan amounts." *Id.* ¶¶ 15-16.

This "waiver practice" was not secret; it was discussed openly within Wilmington Trust for years. *See* SSI ¶ 20.[2] And the Fed, the "primary federal banking agency charged with supervising and regulating" Wilmington Trust, SSI ¶ 7, exercised close oversight of Wilmington Trust's operations. *See* SSI ¶ 54 (recognizing that the defendants understood the Fed could see the volume of matured loans on SHAW, Wilmington Trust's internal accounting system). The Fed conducted regular "safety and soundness examinations" of Wilmington Trust, SSI ¶ 9, and, between these periodic examinations, engaged in continuous monitoring of Wilmington Trust. On October 21, 2009, following the Fed's 2009 full-scope examination of Wilmington Trust, the Fed required Wilmington Trust to enter into a Memorandum of Understanding—an enforcement action that subjected Wilmington Trust to enhanced regulatory scrutiny, including enhanced scrutiny of its past due loan amounts. *See* SSI ¶ 36.

## II.   THE DISCOVERY DISPUTE

Given (1) the allegations that the defendants hid the volume of Wilmington Trust's matured loans that supposedly should have been reported as past due; (2) the longstanding, open discussion by Wilmington Trust employees about the bank not reporting certain matured loans as

---

[2]   Moreover, an industry-wide practice of banks extending commercial real estate loans upon maturity was publicly reported. *See, e.g.*, Lingling Wei, *Banks Get New Rule on Property*, Wall Street Journal at B1 (Oct. 31, 2009).

4

past due; and (3) the Fed's close regulatory oversight of Wilmington Trust, with its particular focus on past due loans and its broad access to Wilmington Trust data, the individual defendants specifically requested that the government produce documents and information in the Fed's possession relating to Wilmington Trust's past due loans. *See* Ex. 3 (Rule 16 Letter from Breen to Kravetz & Wolf, Dec. 1, 2015); Ex. 4 (*Brady* Letter from Breen to Kravetz & Wolf, Dec. 1, 2015). The individual defendants requested similar documents in the possession of the SEC. *See id.*

The government responded by stating that it would produce documents within the possession of Fed-OIG, but refused to produce documents located within the Fed or the SEC because, it claimed, "these entities are not part of the prosecution team." Ex. 5 at 2 (Letter from Wolf to Breen, December 7, 2015). The individual defendants filed *Brady* and discovery motions raising numerous issues, including the dispute regarding documents and information within the possession of the Fed and the SEC. *See* Dkt. 101; Dkt. 109. The government subsequently returned the Second Superseding Indictment, adding Wilmington Trust as a defendant.

During the February 5, 2016 status conference held after the return of the Second Superseding Indictment, Wilmington Trust suggested that the parties meet and confer in an effort to narrow the discovery disputes for the Court. *See* Tr. (02/05/16) at 46. The parties met in person on February 18 and successfully narrowed the range of discovery disputes. During the meeting, the defendants explained that the government had not produced all of the discoverable Fed documents, and asked, among other things, whether the government would expand its search for discoverable documents to include the hard-copy and electronic files of the Fed custodians who were charged with regulatory oversight of Wilmington Trust. The defendants also asked the

government to expand its search to include the files of the SEC staff members who worked on the Wilmington Trust investigation and the SEC staff members who handled the letters commenting on Wilmington Trust's allegedly false SEC filings. The government agreed to consider these requests, but on February 29 the government stated that it would "not be producing any additional documents" in the possession of the Fed or the SEC because, it claimed, those documents are outside "the scope of any discovery obligations imposed by law." Ex. 1 at 3 (Letter from Wolf to Romero, Feb. 29, 2016).

Wilmington Trust has only begun to scratch the surface of the government's production, but it appears (and the government has represented) that the government has produced only 13,406 pages (or approximately three boxes) of documents from the Fed. *See id.* at 2-3. It appears that the vast majority of these documents are copies of binders relating to a subset of the Fed's examinations of Wilmington Trust. This is a tiny fraction of the documents generated by the Fed staff charged with continuous oversight of Wilmington Trust. As far as Wilmington Trust can tell, there are substantial categories of highly relevant Fed documents that simply have not been produced, including communications between the regulators concerning the Wilmington Trust examinations and work papers for which indices were produced but actual documents referenced in those indices were not. Moreover, it appears that the government produced no electronic files or email from the Fed, and the government certainly did not conduct a comprehensive search of the Fed's critical electronic files.[3]

The parties continue to work together to narrow the range of discovery disputes, *see* Ex. 6 (Letter from Romero to Wolf, March 15, 2016); Ex. 7 (Letter from Wolf to Romero, March 21, 2016), but they need the Court to resolve one fundamental, threshold issue now—*where* the

---

[3] The government produced a handful of what appear to be emails that custodians printed contemporaneously and placed in hard-copy files.

6

government must search for documents and information in order to comply with its obligations under Rule 16 and *Brady*. The government has drawn a clear line in the sand: it will produce "[a]ll of the documents in the United States Attorney Office's ***possession***," but it will look no further. Ex. 1 at 4 (Letter from Wolf to Romero, Feb. 29, 2016) (emphasis added).[4]

## ARGUMENT

### I. THE GOVERNMENT'S DISCLOSURE OBLIGATIONS EXTEND BEYOND DOCUMENTS IN THE GOVERNMENT'S ACTUAL, PHYSICAL POSSESSION.

Under controlling Third Circuit law, the government's disclosure obligations under Rule 16 and *Brady* are not defined by actual, physical possession. *See, e.g.*, *United States v Risha*, 445 F.3d 298, 303 (3d Cir. 2006) ("There is no question that the government's duty to disclose under *Brady* reaches beyond evidence in the prosecutor's actual possession."); *United States v. Lee*, 573 F.3d 155, 161 & n.1 (3d Cir. 2009) (stating that although "United States Attorney's Office did not have actual physical possession" of document, possession by local law enforcement assisting investigation was sufficient "to trigger Rule 16's disclosure requirements") (citing *Risha*). The obligation to produce extends to documents and information that the government has the legal right or practical ability to obtain. Stated another way, the government must produce documents that are "readily available" to it. *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991).

**A.     Rule 16.**  Rule 16 of the Federal Rules of Criminal Procedure explicitly requires the government to produce documents in its "possession, custody, or ***control***." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). Control, for these purposes, is "broadly construed." *United*

---

[4]    Once the Court resolves this threshold issue, the defendants believe they will be able to resolve most, if not all, other discovery issues—including the specific categories of materials that need to be produced from the Fed and SEC files—through continued negotiations with the government. In the event that proves unsuccessful, the defendants will present those narrowed disputes to the Court.

7

*States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) (quoting 7 Moore's Federal Practice § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006)). "[A]ctual physical possession" is not required. *See Lee*, 573 F.3d at 161 & n.1. To the contrary, courts "have in the main been more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue whether the documents are actually within the physical possession of the prosecutor." *United States v. Libby*, 429 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (quotation omitted).

1. The government has an obligation to produce documents where it has a "legal right to obtain the documents upon demand." *Stein*, 488 F. Supp. 2d at 361 (quoting 7 Moore's Federal Practice § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006)); *see also Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (explaining that "control" in the context of Fed. R. Civ. P. 34 "is defined as the legal right to obtain required documents on demand"); *Rosie v. Romney*, 256 F. Supp.2d 115, 119 (D. Mass. 2003) (ordering state agency to produce documents "in the possession of the various non-defendant agencies" because it had a contractual right to examine and copy the records); C. Wright & A. Miller, 8 Federal Practice & Procedure § 2210, at 149 (providing that "[i]nspection" under Fed. R. Civ. P. 34 "can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy"). Indeed, "every circuit to have considered the question has held that 'control' under the federal rules of procedure includes the legal right to obtain the documents in question." *Stein*, 488 F. Supp. 2d at 363.

2. The government also must produce documents held by any "federal agency allied with the prosecution." *United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989); *see also United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978) (explaining that government not

8

"excused from its obligation" under Rule 16 "by the fact that the documents were in the possession of the FBI"); *Libby*, 429 F. Supp. 2d at 6 (holding that documents in possession of CIA and Office of the Vice President were in the control of the prosecution because they were aligned with the prosecution team); 25 Moore's Federal Practice § 616.05[1][e] (3d ed. 2014) (explaining that Rule 16 extends to "material that is in the possession of any federal agency that participated in the investigation that led to defendant's indictment or that has otherwise cooperated with the prosecution" (footnote omitted)).

    3.    Depending on the circumstances, the government may have an obligation to produce documents in the possession of private parties. *See United States v. Skeddle*, 176 F.R.D. 258, 261-62 & n.5 (N.D. Ohio 1997) (holding that government required to obtain, and produce, documents previously made available to prosecutors by private party because government had ability to obtain documents on demand). When the government has a contractual right to obtain documents from a private party, such documents are within the government's control. *See Stein*, 488 F. Supp. 2d at 363-64 (holding that government had control over documents in possession of KPMG because deferred prosecution agreement gave government authority to request documents). Even absent an explicit contractual entitlement to documents in the hands of a private party, the government may have the practical ability to obtain documents from a private party that is cooperating with the government. *See United States v. Kilroy*, 523 F. Supp. 206, 215 (E.D. Wis. 1981) (requiring government to ask cooperating corporation for documents because "it appears that the records are, practically speaking, within the Government's control").

    **B.**    **Brady.** The scope of the prosecutor's obligation under *Brady* is similar. "[T]he Third Circuit has imposed an obligation on prosecutors to 'produce certain evidence actually or constructively in its possession ***or accessible to it***.'" *United States v. Rigas*, 779 F. Supp. 2d 408,

9

414 (M.D. Pa. 2011) (emphasis added) (quoting *Perdomo*, 929 F.2d at 970). This is a "liberal standard." *Id.* The government clearly has a duty to produce information maintained by agencies that are part of the prosecution team; but the obligation does not stop there. *See Perdomo*, 929 F.2d at 971 (holding for *Brady* purposes that "criminal background information contained in local Virgin Islands records was information that was 'readily available' to the prosecution"). In *Risha*, the Third Circuit identified three questions that could indicate that evidence physically held by another agency is subject to disclosure:

> (1) whether the party with knowledge of the information is acting on the government's "behalf" or under its "control"; (2) the extent to which [the government agencies] are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.

445 F.3d at 304. Under any one of these theories, the government must produce documents and information located within the Fed and the SEC.

## II. THE GOVERNMENT MUST PRODUCE DOCUMENTS AND INFORMATION LOCATED WITHIN THE FED.

Applying these well-established principles, it is clear that the government has an obligation to search the Fed's files for *Brady* material and documents discoverable under Rule 16.

### A. The Government Has a Legal Right of Access to Fed Documents.

The government concedes that the Fed-OIG "is a part of the prosecution team." Ex. 1 at 4 (Letter from Wolf to Romero, Feb. 29, 2016). The Fed-OIG has a statutory right to obtain all documents or other materials located within the Fed. Pursuant to the Inspector General Act of 1978, the Fed-OIG is authorized to access "all records, reports, audits, reviews, documents, papers, recommendations, or other material available" to the Fed. 5 U.S.C. App. 3, § 6(a)(1). The Fed-OIG touts this broad right of access on its website. *See* OIG: FAQs available at

10

http://oig.federalreserve.gov/faq-about-oig.htm#q140 (stating that Fed-OIG has "access to all records and documents available to the agencies it oversees"). *See also* http://oig.federalreserve.gov/faq-about-oig.htm#q160 (stating that Fed-OIG has "unfiltered access to any and all information available to [the Fed] that is needed to fulfill the OIG's responsibilities"). In its February 29 letter, the government admits that Fed-OIG "may access the materials in the possession, custody, or control of the" Fed. Ex. 1 at 4 (Letter from Wolf to Romero, Feb. 29, 2016). This ends the inquiry; because the prosecution team has a legal right of access to documents within the Fed, it is required to search those files for discoverable information under Rule 16 and *Brady*. *See Risha*, 445 F.3d at 304 ("ready access"); *Mercy Catholic Med. Ctr.*, 380 F.3d at 160 ("legal right to obtain required documents on demand"); *Perdomo*, 929 F.2d at 971 ("readily available").

### B. The Fed, Not Just the Fed-OIG, Is Allied with the Prosecution.

There is a second, independent reason that the government must search the files of the Fed to satisfy its Rule 16 and *Brady* obligations. The Fed "shar[ed] resources" with and is "closely aligned with" the prosecution. *Risha*, 445 F.3d at 304, 306.

The government has not provided full discovery into its level of cooperation with the Fed, but the available evidence clearly demonstrates that the Fed participated in the investigation and assisted the prosecution. Most fundamentally, upon motion of the government demonstrating that there was "substantial need," this Court issued an Order authorizing disclosure of grand jury information to twenty-one specific Fed employees as well as staff "of the Federal Reserve Board System and the Federal Reserve Banks of New York and Philadelphia" for the express purpose of allowing the Fed to "*assist the attorneys for the government in the investigation of these matters*." Ex. 2 at 2-3 (Disclosure Order, August 5,

11

2013) (emphasis added).[5] That alone requires the government to search the Fed's files for documents and information subject to disclosure under Rule 16 and *Brady*. Presumably as a result of this Order, lawyers from the Fed participated in the investigative interviews of several witnesses, including cooperating witnesses. *See, e.g.*, Ex. 8 (excerpt of J. Terranova interview memo); Ex. 9 (excerpt of B. Bailey interview memo). And government memoranda refer to a joint investigation with the Fed. *See, e.g.*, Ex. 10 (excerpt of memo referencing investigation by "the Federal Reserve Bank" and other agencies "in conjunction with the U.S. Attorney's Office"); Ex. 11 (same).

Given this "sharing [of] resources," *Risha*, 445 F.3d at 304, between the Fed and the government, the government "cannot now, in fairness, be permitted to disclaim all responsibility for obtaining" Fed documents, *see Poindexter*, 727 F. Supp. at 1477. What the Ninth Circuit said about the FDA in *United States v. Wood*, applies with equal force to the Fed in the present case:

> [T]he agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute. The government cannot with its right hand say it has nothing while its left hand holds what is of value.

57 F.3d 733, 737 (9th Cir. 1995).[6]

---

[5] Wilmington Trust requests that the government motion and affirmation be unsealed for purposes of providing it to defense counsel, and making it a part of the record in this case.

[6] The government's prior reliance on *United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005) is misplaced. First, *Pelullo* arose in a very different procedural context. In that case, the defendant attacked his conviction, post-trial, on the grounds that the prosecutor should have obtained files from the Pension Welfare Benefits Administration ("PWBA"). But, prior to trial, he "never made a specific request for the PWBA documents." *Id.* at 218 n.23. Here, the defendants are specifically asking pretrial for a search of the Fed's relevant files. More importantly, there was "***no indication***" in *Pelullo* either that the prosecution and PWBA engaged

### C. Because the Indictment Charges the Defendants with Concealing Information from the Fed, It Would Be Unfair to Shield the Fed's Files from Discovery.

By charging the defendants with concealing information from the Fed—the regulator that had day-to-day oversight of Wilmington Trust and access to the bank's files—the government has put at issue the actions, knowledge, and beliefs of the Fed. It cannot shield the Fed's files from discovery by claiming that the Fed is somehow unconnected to this case.

The Third Circuit in *Perdomo*, 929 F.2d at 971, relied on *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984), a case that is instructive here. In *Deutsch*, defendants who were charged with bribing an employee of the U.S. Postal Service requested production of the employee's personnel file. The district court agreed with the prosecutor that the personnel file was not in the prosecutor's control and declined to compel its production. The Fifth Circuit reversed, holding that "[t]he government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files." *Id.* at 57. In reaching this conclusion, the Fifth Circuit explained that "different 'arms' of the government, particularly when so closely connected as this one for the purpose of this case, are [not] severable entities." *Id.* So too here, the Fed cannot be severed from the rest of the government and the cooperative effort to prosecute the defendants.

The district court in *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005) reached a similar conclusion when the charges against the defendant placed the files of another executive branch agency at issue. There, the indictment charged the defendant with several counts,

---

in a joint investigation or otherwise shared labor and resources. *Id.* at 218 (emphasis added). As set forth above, the Fed assisted and participated in the investigation of the present case.

13

including one count of making false statements to the General Services Administration ("GSA") and another count of making false statements to the Office of Inspector General ("OIG") for the GSA. The court held that the government's disclosure obligation under Rule 16 "encompasses more than just the Justice Department, the FBI, the GSA-OIG and other investigative agencies." *Id.* at 18. The court directed the government to search the files of GSA, including its archived email servers and hard drives. *See id.* at 18-19. *See also United States v. W.R. Grace*, 401 F. Supp. 2d 1093, 1100 (D. Mont. 2005) ("[B]ecause the prosecution has placed the information at issue by basing allegations in the Indictment on the ATDSR study and planning to introduce the study's findings at trial . . . [,] the medical records supporting the ATDSR study are within the government's possession under the 'knowledge and access' test.").

\*          \*          \*

The prosecution team has a statutory right of access to documents within the Fed; the Fed is closely aligned with the prosecution; and the government's charges have placed the Fed's files at issue. For each of these reasons, the government's obligations under Rule 16 and *Brady* extend to the Fed's files.

### III. THE GOVERNMENT MUST PRODUCE DOCUMENTS AND INFORMATION LOCATED WITHIN THE SEC.

The government's obligations under Rule 16 and *Brady* also extend to the SEC's files. Again and again over the course of the four year investigation, in ways large and small, the SEC and the government "shar[ed] resources." *Risha*, 445 F.3d at 304.

**Conducting joint interviews.** The SEC participated in 29 witness interviews, some of which it hosted at its New York office. *See* Dkt. 134, at 12. Indeed, it appears that after the government began its investigation, the SEC did not conduct *any* investigative interviews except

14

for those that were conducted jointly. *See* Ex. 7 at 2 (Letter from Wolf to Romero, Mar. 21, 2016).

**Obtaining third-party documents for the prosecution.** The government also relied upon the SEC to obtain (and likely analyze) documents from key third-parties such as Wilmington Trust's outside auditor KPMG—the accountants who certified the accuracy of Wilmington Trust's supposedly false financial statements. The government did not even issue a grand jury subpoena to KPMG, *see id.* at 3, but instead relied upon the SEC to decide which KPMG documents to collect "on the government's 'behalf.'" *Risha*, 445 F.3d at 304. All told, the SEC obtained more than a million pages of the documents that it provided to the government, after granting the government "ready access," *id.*, to its files. *See* Dkt. 114, at 9 ("[T]he Government received approximately 1,161,126 pages of documents from the SEC pursuant to an access request.").

**Sharing core investigative documents.** The SEC also shared core investigative documents with the government, including investigative notes and the confidential *Wells* submissions made to the SEC by individual defendants. *See* Dkt. 134, at 12, 14.[7]

**Coordinating charging documents and press releases.** The efforts of the SEC and the U.S. Attorney's Office were so intertwined, in fact, that the two organizations coordinated the filing of the SEC's civil action against the individual defendants with the announcement of the government's first indictment. *See United States v. Rigas*, 779 F. Supp. 2d 408, 414 (M.D. Pa. 2011) ("There can be little doubt that the SEC's investigation into [defendants] was jointly undertaken" with the government, "particularly in view of the fact that the [government's] criminal complaint and the SEC's complaint against [defendants] were filed in successive

---

[7] A *Wells* submission is a written submission by a person under investigation by the SEC explaining why the SEC should not bring enforcement proceedings.

15

days."). In a press release issued on May 6, 2015, the government recognized that "[t]he Securities and Exchange Commission has also contributed to the investigation." Ex. 12 at 2 (DOJ Press Release, May 6, 2015). That very day, in its own press release, the SEC noted the announcement of criminal charges against Mr. North and Ms. Rakowski in the government's "related action," and affirmed that it "appreciates the assistance of the U.S. Attorney's Office for the District of Delaware, Federal Bureau of Investigation, Federal Reserve, and Office of the Special Inspector General for the Troubled Asset Relief Program." Ex. 13 at 1, 2 (SEC Press Release, May 6, 2015).[8] This coordination in the simultaneous issuance of charging documents and press releases is unsurprising given that the substance of the SEC and government charges is nearly identical; both allege that the individual defendants participated in the same alleged underreporting of past due loans.

Simply put, the investigation of Wilmington Trust and its officers and employees by the SEC and the government was a collaborative effort through and through. The government's objections to the contrary are inconsistent with the record and with the SEC's stated policies for working with the Department of Justice. *See* SEC Enforcement Manual § 5.2.1 (encouraging SEC staff "to work cooperatively with criminal authorities, to share information, and to coordinate their investigations with parallel criminal investigations when appropriate").

Furthermore, documents from within the SEC should be produced to the defendants because the government's allegations put the SEC's actions, knowledge and beliefs directly at issue. The charges in the Second Superseding Indictment are predicated in part on the defendants' purported failure to disclose information regarding Wilmington Trust's past due

---

[8] These press releases were not the only ones in which the SEC and the government expressed their gratitude for each other's efforts. *See* Ex. 14 (SEC Press Release, Sept. 11, 2014); Ex. 15 (DOJ Press Release, Aug. 5, 2015).

16

loans to the SEC—the very organization that assisted the government in the investigation of Wilmington Trust.[9]

## CONCLUSION

For the foregoing reasons, Wilmington Trust requests that this Court order the government to expand its Rule 16 and *Brady* search to encompass documents and information within the Fed and the SEC. Wilmington Trust submits that, under controlling precedent, the available facts mandate that the government search the Fed and SEC files. However, should the Court disagree, Wilmington Trust requests an evidentiary hearing with respect to the interactions between the government and the Fed and SEC in the conduct of this investigation.

Dated: April 1, 2016                                             Respectfully submitted,

                                                                 /s/ *Lori W. Will*
                                                                 Lori W. Will (ID No. 5402)
Brendan V. Sullivan, Jr.                                         SKADDEN, ARPS, SLATE,
Barry S. Simon                                                   MEAGHER & FLOM LLP
Margaret A. Keeley                                               920 N. King Street
Tobin J. Romero                                                  P.O. Box 636
Lance A. Wade                                                    Wilmington, Delaware 19899
WILLIAMS & CONNOLLY LLP                                          Tel.: (302) 651-3000
725 Twelfth Street, NW                                           lori.will@skadden.com
Washington, DC 20005
Tel.: (202) 434-5000                                             Christopher J. Gunther
bsullivan@wc.com                                                 SKADDEN, ARPS, SLATE,
bsimon@wc.com                                                    MEAGHER & FLOM LLP
mkeeley@wc.com                                                   Four Times Square
tromero@wc.com                                                   New York, New York 10036
lwade@wc.com                                                     Tel.: (212) 735-3483
                                                                 cgunther@skadden.com

*Attorneys for Defendant*
*Wilmington Trust Corporation*

---

[9] Given that the SEC approved a no-fraud, no admission of liability settlement with Wilmington Trust, the SEC files likely contain exculpatory information.