# Exhibit 1



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*                                    *(302) 573-6277*
*1007 Orange Street, Suite 700*                  *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

February 29, 2016

**BY FEDERAL EXPRESS**
Tobin J. Romero, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

        Re:  **United States v. Wilmington Trust, et al.**
             **Criminal Action No. 15-23 (RGA)**

Dear Mr. Romero:

Enclosed please find the following discovery materials:

(1)        One disc labeled LTSC-Dec16VenableDocs, containing the supplemental
           documents received from Venable, that had previously been produced in the
           civil case;

(2)        One disc labeled LTSC-February172016, containing 284 documents
           consisting of supplemental materials produced by Wilmington Trust and the
           Federal Reserve Board of Governors;

(3)        One disc labeled AGENTSNOTES-00000001 to
           AGENTSNOTES-00002587; AGENTSRPRTS-001623 to
           AGENTSRPRTS-001625; and SUPP-PAPER-DOCS-0000263 to
           SUPP-PAPER-DOCS-0000448;

(4)        One disc labeled David Kenney 7-24 12, containing a recorded interview of
           Mr. Kenney;

(5)        One disc labeled Joe Terranova and Brian Bailey Telephonic- 10-20-12,
           containing one consensually recorded telephone call;

(6)        One disc labeled Joe Terranova and Brian Bailey Telephonic 01-30-2013,
           01-30-2013 & 01-30-2013 & 02-01-2013, containing four consensually
           recorded telephone calls; and

1

(7)     One disc labeled Joe Terranaova & Brian Bailey Video- 10/25/2012, containing a consensually recorded meeting.

All of these materials are being produced to you subject to the terms of the Protective Order.

In addition, during our meeting on February 18, 2016, you requested certain additional information relating to the document production.

First, you requested that we identify the categories of "historical documents" that we had not produced as we deemed them not only outside the scope of Rule 16, but irrelevant to the charges in the Superseding Indictment. As previously indicted, the materials we have not produced comprise several categories of documents, specifically: (1) financial records of Michael Zimmerman and certain of his associates; (2) records supplied by third party vendors who contracted with Zimmerman; (3) documents produced by certain partners and associates of Zimmerman; (4) documents relating to the phone and internet records of Zimmerman; (5) financial records of certain bank employees, their spouses or business partners, unconnected to the criminal conduct charged in the Superseding Indictment; (6) documents obtained from a third-party developer relating to that developer's internal accounting and operations; (7) documents obtained from state and local Delaware governmental entities relating to the same third-party developer; (8) bank records of certain third-parties connected to that developer; and (9) documents obtained through the execution of search warrants at the residence and offices of Zimmerman, the residence of James Ladio, and at MidCoast Bank. While we have not produced these materials pursuant to Rule 16, we remain mindful of our obligations pursuant to Brady, Giglio, and Jencks, and will produce any such materials as required by those duties.

Second, while the discovery motion filed by the individual defendants with the Court asked that we provide copies of all subpoenas issued in the course of the investigation, during the meet and confer, you specifically requested any subpoenas issued to banking regulators. We have enclosed copies of those subpoenas. Below please find a chart connecting those subpoenas to the bates ranges of responsive documents.

| Subopena Issued To: | Date of Subpoena: | Bates Range of Documents Returned: |
|---|---|---|
| Board of Governors of the Federal Reserve System | June 28, 2011 | <ul><li>WTC-GJ-00009948 to WTC-GJ-00010330 (also marked SIGTARP-Wilmington Trust 000001 to SIGTARP-Wilmington Trust 000383);</li><li>WTC-GJ-00010331 to WTC-GJ-00010334;</li><li>WTC-GJ-00014457 to WTC-GJ-00014464 (also marked SIGTARP-Wilmington Trust 000268a to SIGTARP-Wilmington Trust 000268f)</li></ul> |
| Federal Reserve Board | February 1, 2012 | <ul><li>GJ-Fed-WTC-000001 to GJ-Fed-WTC-009580 (also marked</li></ul> |

| | | |
|---|---|---|
| | | FRBP 000001 to FRBP 009580);<br>• FRB-00001 to FRB-01016 (also marked FRBP 009583 to FRBP 010596) |
| Delaware Office of the State Banking Commission | August 24, 2012 | • DE-OSBCB1-000000001 to DE-OSBCB1-00001872;<br>• DE-OSBCB2-000001873 to DE-OSBCB3-00006526;<br>• DE-OSBCB4-00006527 to DE-OSBCB6-00012457;<br>• PROD74-DE-OSBCB-00000001 to PROD74-DE-OSBCB000002323 (also marked DE-OSBCB7-00012458 to DE-OSBCB7-00014780);<br>• PROD74-DE-OSBCB-00002324 to PROD74-DE-OSBCB000002967 (also marked DE-OSBCB8-00014781 to DE-OSBCB8-00015424);<br>• PROD74-DE-OSBCB-00002968 to PROD74-DE-OSBCB000006734 (also marked DE-OSBCB9-00015425 to DE-OSBCB9-00019191)<br>• PROD74-DE-OSBCB-00006735 to PROD74-DE-OSBCB000017186 |
| Secretary of the Federal Reserve Board | June 13, 2013 | • BOG-USAO-000001 to BOG-USAO001778 |
| Federal Reserve Bank of Philadelphia | July 5, 2013 | • FRBP 10599 to FRBP 10827 |
| Federal Home Loan Bank, Pittsburgh | July 1, 2013 | • FHLB-00001 to FHLB-00600 |
| Federal Financial Institutions Examination Counsel | September 16, 2013 | • BOG000001 to BOG000785 (produced on a CD) |
| Various materials associated with prior requests | | • FED-SUPPMAT-000001 to FED-SUPPMAT-000408 |

In addition, pursuant to an access request, we also received documents from the OCC, which are Bates numbered FDIC-0000001 to FDIC-0001323.

Third, during the course of the meeting we agreed to consider your requests relating to the possible production of additional materials from the SEC and Federal Reserve Board of Governors ("Board of Governors"). After carefully considering the requests and the bases for those requests, we will not be producing any additional documents as those requests exceed the scope of any discovery obligations imposed by law. As we set forth in our opposition to the individual

3

defendants' discovery motion, neither the SEC nor the Board of Governors are a part of the prosecution team. Nonetheless, as we previously agreed and consistent with Gupta, we will review the notes and memoranda arising in connection with the proffer sessions in which these agencies participated will produce any such information consistent with our Brady obligations. Please also be advised that the Court entered an order pursuant to Title 18, United States Code, Section 3322 ("3322 Order"), authorizing the disclosure of grand jury materials to the Board of Governors. We have also enclosed a copy of the 3322 Order, which was recently unsealed by the Court. We do not believe the existence of the 3322 Order alters the relevant analysis or otherwise mandates that all materials within the possession, custody, or control of the Board of Governors are subject to disclosure pursuant to Rule 16 or Brady.

Finally, while the Federal Reserve Board of Governors Office of Inspector General (Fed-OIG) is a part of the prosecution team, its participation in this matter does not trigger the broad disclosure obligations you posited during the meeting. As an office of inspector general, Fed-OIG maintains an independent function from the Board of Governors, but its agents are also employees of the Board of Governors. While you correctly state that they may access the materials in the possession, custody, or control of the Board of Governors, the governing federal regulation, 12 C.F.R. § 261.21(e), bars the disclosure of confidential supervisory information to law enforcement agencies, including the United States Attorney's Office, absent a specific request. Consistent with those regulations, in the instant case, the United States Attorney did not receive any documents from Fed-OIG, but instead through the service of subpoenas upon the Board of Governors. All of the documents in the United States Attorney Office's possession, which it received from the Board of Governors and other bank regulatory agencies, have been produced to you.

In light of the above, it appears that most, but not all, of our discovery disputes have been resolved. As indicated in Mr. Romero's February 25, 2016 e-mail, we should discuss an expedited briefing schedule so that the Court may address the remaining issues promptly.

Very truly yours,

CHARLES M. OBERLY, III
United States Attorney


BY: /s/Lesley F. Wolf
    Lesley F. Wolf
    Robert F. Kravetz
    Jamie M. McCall
    Alexander P. Ibrahim
    Assistant United States Attorney


Enclosures

4

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF DELAWARE

SEALED

|  |  |
|---|---|
| ) | |
| ) | |
| IN RE: GRAND JURY INVESTIGATION  ) | MISC. NO. 13- 236 |
| ) | (UNDER SEAL) |
| ) | |

2013 AUG -5  PM 4: 23

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## DISCLOSURE ORDER

AND NOW, this __5th__ day of August 2013, the Court, having considered the Government's Motion for Disclosure Order and accompanying Affirmation, finds that:

1.      A grand jury currently impaneled in this district is involved in the investigation of whether Wilmington Trust Corporation ("WTC"), its subsidiary, Wilmington Trust Company (the "Bank"), and other former officers and employees thereof, known and unknown to the grand jury, have committed or conspired to commit offenses against the United States between 2005 and 2010 (the "relevant time period"), including but not limited to bank fraud and conspiracy to commit bank fraud (in violation of 18 U.S.C. §§ 1344 and 1349) and false statements to bank examiners (in violation of 18 U.S.C. § 1005).

2.      In order for the Board of Governors of the Federal Reserve System ("Federal Reserve Board") to fully carry out its mandate to oversee the supervision and regulation of banks subject to its jurisdiction, and to take appropriate regulatory action when necessary, there exists a substantial need for personnel of the Federal Reserve Board to review grand jury information gathered in connection with the criminal investigation before the grand jury impaneled in this district which is investigating the foregoing allegations.  There also exists a substantial need for personnel of the Federal

1

Reserve Board, as subject matter experts and regulators, to assist the attorneys for the

government in the investigation of these matters.

IT IS THEREFORE ORDERED that pursuant to 18 U.S.C. §3322(b) that grand

jury information and materials pertaining to the grand jury investigation of Wilmington

Trust Corporation, Wilmington Trust Company, and other formers officers and

employees concerning the foregoing allegations may be reviewed by the following

identified individuals of the Federal Reserve System:

- Chairman Ben S. Bernanke, Board of Governors ("FRB");
- Vice Chairman Janet L. Yellen (FRB);
- Governor Daniel K. Tarullo (FRB);
- Governor Sarah Bloom Raskin (FRB);
- Governor Jeremy C. Stein (FRB);
- Governor Jerome H. Powell (FRB);
- Scott G. Alvarez, General Counsel, Board of Governors Legal Division ("Legal");
- Richard M. Ashton, Deputy General Counsel (Legal);
- Jason A. Gonzalez, Senior Counsel (Legal);
- Michael S. Gibson, Director, Board of Governors Division of Banking Supervision and Regulation ("BS&R")
- Maryann Hunter, Deputy Director (BS&R);
- Barbara Bouchard, Senior Associate Director (BS&R);
- Jack Jennings, Senior Associate Director (BS&R);
- Nancy Oakes, Manager, Enforcement (BS&R);
- Thomas C. Baxter, Jr., Executive Vice President, General Counsel, Federal Reserve Bank of New York (FRB New York);
- Thomas H. Roche, Senior Vice President, Deputy General Counsel (FRB New York);
- Shari Leventhal, Senior Vice President, Assistant General Counsel (FRB New York);
- William W. Lang, Executive Vice President, Federal Reserve Bank of Philadelphia (FRB Philadelphia);
- Jeanne R. Rentezelas, General Counsel (FRB Philadelphia);
- Maryann T. Connelly, Counsel (FRB Philadelphia);
- Phillip Keitel, Senior Attorney (FRB Philadelphia); and

- Staff of the Federal Reserve Board System and the Federal Reserve Banks of New York and Philadelphia, subject to the direct supervision of the identified personnel above.

IT IS FURTHER ORDERED that pursuant to 18 U.S.C. § 3322(b)(1)(A) and (B), the foregoing persons shall use such materials solely for matters currently undertaken by the Federal Reserve Board relative to its jurisdiction over bank holding companies and state member banks as it relates to Wilmington Trust Corporation, Wilmington Trust Company, and any other financial institutions that fall within the scope of the grand jury's investigation and the jurisdiction of the Federal Reserve Banks of Philadelphia and New York, and to assist the attorneys for the government in the investigation of these matters.

IT IS FURTHER ORDERED that a copy of this Order may be distributed to the persons named above, and the Motion, Affirmation and Order herein are placed under seal pending further order of the Court.

BY THE COURT:

_____

Hon. Sue L. Robinson
United States District Judge

CERTIFIED:
AS A TRUE COPY:
ATTEST:
JOHN A. CERINO, CLERK
BY _____
Deputy Clerk 8/5/13

3

# Exhibit 3

# PAUL
# HASTINGS

1(212) 318-6344
kennethbreen@paulhastings.com

December 1, 2015                                            78780.00002

**VIA ELECTRONIC MAIL**

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
United States Attorney's Office
District of Delaware
1007 Orange Street, Suite 700
Wilmington, Delaware 19899

Re:    United States v. David Gibson, et al., 15-CR-23 (RGA)

Dear Mr. Kravetz and Ms. Wolf:

Pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, and on behalf of all defendants in the above-captioned criminal action (the "Defendants"), we request that the Government provide the information called for below forthwith, take all steps necessary to secure and maintain all relevant electronic and hardcopy data and confirm that it has completed certain aspects of its obligations under Rule 16.

## I.    RULE 16 DISCOVERY REQUESTS

The deadline to produce Rule 16(a)(1)(A)-(F) information under the parties' joint proposed schedule was October 21, 2015. We have reviewed the documents produced to date. It is apparent from our review that the Government is withholding certain documents[1] and information that are required to be produced pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The Government has not produced all Rule 16(a)(1)(A)-(F) information. The documents we are requesting are material to the preparation of the defense.

We request that the United States Attorney's Office for the District of Delaware ("U.S. Attorney's Office") immediately produce the following documents and information in the possession, custody or control of the U.S. Attorney's Office and the prosecution team, including but not limited to the Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), Internal Revenue Service ("IRS"), Federal Reserve Board ("FRB"), Federal Reserve Bank, Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), Department of the Treasury, and U.S. Securities and Exchange Commission ("SEC"), as well as any individual or entity with which there is a cooperation agreement or that is voluntarily providing material to the Government:

---

[1] In this letter, the word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, computer facilitated or transmitted materials, electronically stored information, metadata, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

PAUL
HASTINGS

Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 2

1. <u>Banking Regulators</u> - For the period 2005 through 2010, all documents and communications in the possession of the federal banking regulators, including the Board of Governors of the Federal Reserve System ("Federal Reserve Board of Governors"), the FRB, the Federal Reserve Bank, the Office of Thrift Supervision ("OTS"), the Federal Deposit Insurance Corporation ("FDIC"), and/or banking regulators for the State of Delaware, including the Office of the State Bank Commissioner, relating to the following issues:

   a. the treatment and manner of reporting past due loans by Wilmington Trust Corporation or Wilmington Trust Company (collectively referred to herein as "WTC");

   b. the treatment and manner of reporting past due loans by other financial institutions;

   c. the waiver of loans from past due reporting by WTC;

   d. the waiver of loans from past due reporting by other financial institutions;

   e. any examination of WTC, including any audit or safety and soundness examination;

   f. documentation indicating that any federal or state regulator had access to, printed or extracted information contained on the SHAW system;

   g. WTC's modified underwriting and/or short-term extension projects pre-dating 2009;

   h. WTC's short-term extension project between Q3 2009 and Q2 2010;

   i. regulations or requirements governing the use of appraisals in the extension of matured loans;

   j. interpretation of the definition of "past due" set forth in the Call Report instructions; and

   k. criteria for requiring or directing institutions to file corrected Call Reports.

2. <u>KPMG</u> - For the period 2005 through 2010, all documents and communications in the possession of KPMG relating to the following issues:

   a. any reference to matured loans as a percentage of loans on WTC's books and records;

   b. the treatment and manner of reporting past due loans by WTC;

   c. the treatment and manner of reporting past due loans by other financial institutions;

   d. any indication that KPMG had access to, printed or extracted information contained on the SHAW system;

   e. the waiver of loans from past due reporting by WTC;

   f. the waiver of loans from past due reporting by other financial institutions;

PAUL
HASTINGS

Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 3

    g.   complete audit work papers, including but not limited to any analysis related to past due loans, the accrual/nonaccrual of loans, matured loans, TDRs and CALL reports, and any documentation or analysis related to Workpaper A-60;

    h.   KPMG software used to review and prepare audit work papers;

    i.   communications relating to past due loans concerning WTC's Form 10-Q for the period ending June 30, 2010;

    j.   communications with KPMG's national office relating to WTC;

    k.   any analysis of material errors regarding WTC and/or communication concerning any potential restatement of WTC's audited financial reports;

    l.   the native files of all Excel spreadsheets produced on behalf of KPMG to the Government;

    m.   WTC's modified underwriting and/or short-term extension projects pre-dating 2009;

    n.   WTC's short-term extension project between Q3 2009 and Q2 2010;

    o.   interpretation of the definition of "past due" set forth in the Call Report instructions; and

    p.   criteria for requiring or directing institutions to file corrected Call Reports.

3.   <u>SEC</u> - For the period 2005 through 2010, all documents and communications in the possession of the SEC relating to the following issues:

    a.   the treatment and manner of reporting past due loans by WTC;

    b.   the treatment and manner of reporting past due loans by other financial institutions;

    c.   the waiver of loans from past due reporting by WTC;

    d.   the waiver of loans from past due reporting by other financial institutions;

    e.   WTC's modified underwriting and/or short-term extension projects pre-dating 2009;

    f.   WTC's short-term extension project between Q3 2009 and Q2 2010;

    g.   the SEC's definition of "past due" for purposes of reporting in Forms 10-Q and/or 10-K; and/or

    h.   criteria for requiring or directing institutions to file corrected or restated Forms 10-Q and/or 10-K.



Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 4

II.      **PRESERVATION OF DATA**

We also request that the Government take affirmative steps to ensure that all electronic and hard copy documents and information relating to the Government's investigation, the allegations in the Superseding Indictment pending against the Defendants, any alleged coconspirator, any cooperating witness, and any potential witness, including all documents and information covered by any request by the Defendants, whether or not the Government agrees that the materials sought are discoverable, are preserved.  The Government's preservation obligation is not limited to documents and information obtained from third parties, but extends to documents, notes, emails, text messages and other electronically stored information maintained by the Government, including all of the agencies identified above as part of the prosecution team.

III.     **CONFIRMATION OF PRIOR PRODUCTIONS**

Please confirm that the government has already completed its production of the following categories of discovery:

A.       The substance of any relevant oral statement made by the Defendants to any Government agent, including any member of the prosecution team.

B.       Any relevant written or recorded statement by the Defendants in the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence could be known, to the Government.  Fed. R. Crim. P. 16(a)(1)(B)(i).  This request includes, without limitation:

1.       All written or recorded statements of witnesses that reflect, relate to, or incorporate any relevant statements purportedly made by any of the Defendants;

2.       Notes or memoranda of any Government agent or attorney containing the substance of any statement purportedly made by any of the Defendants; and

3.       All other documents that reflect, relate to, or incorporate any relevant statements purportedly made by any of the Defendants.

The Government has failed to complete its discovery production pursuant to Rule 16(a)(1)(A)-(F) by October 21, 2015 and, as a result, the Defendants have not received certain discovery that is material to their defenses.  Accordingly, please provide us with the Government's position with respect to each of the above-referenced requests as soon as possible, and no later than December 4, 2015, so that we can take any necessary actions to address these requests.

Sincerely,

Kenneth M. Breen
of PAUL HASTINGS LLP

cc: All Counsel for Defendants

# Exhibit 4

# PAUL
# HASTINGS

1(212) 318-6344
kennethbreen@paulhastings.com

December 1, 2015                                                                     78780.00002

**VIA ELECTRONIC MAIL**

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
United States Attorney's Office
District of Delaware
1007 Orange Street, Suite 700
Wilmington, Delaware 19899

Re:     United States v. David Gibson, et al., 15-CR-23 (RGA)

Dear Mr. Kravetz and Ms. Wolf:

On behalf of all defendants in the above-captioned criminal action (the "Defendants"), we request that the Government promptly produce various categories of material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

The information called for in the requests is critical to the defense, and as a result, we ask that you inform the Defendants by December 4, 2015 as to whether you will comply with these requests and whether you agree or disagree with the Defendants' classifications of Brady material.

**The Defendants' Requests**

The Defendants request that the Government promptly provide the following documents and information in the possession, custody or control of the Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), Internal Revenue Service ("IRS"), Federal Reserve Board ("FRB"), Federal Reserve Bank, Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), Department of the Treasury, and U.S. Securities and Exchange Commission ("SEC"), including any individual or entity with which there is a cooperation agreement or that is voluntarily providing material to the Government:

A.      **Classifications of Brady Material**[1]

1.      <u>Banking Regulators</u> - Information that federal banking regulators, including the Board of Governors of the Federal Reserve System ("Federal Reserve Board of Governors"), Federal Reserve Bank, FRB, Office of Thrift Supervision ("OTS"), Federal Deposit Insurance Corporation ("FDIC"), and/or banking regulators for the State of Delaware, including the Office of the State Bank Commissioner (collectively, "Banking Regulators"):

---

[1] The classifications of Brady material identified herein are intended merely to supplement any other Brady material that the Government possesses or of which it is aware.  We are entitled to prompt production of all such Brady material.

PAUL
HASTINGS

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 2

a.   had access to the SHAW system;

b.   printed or extracted information from the SHAW system during the examination of Wilmington Trust Corporation or Wilmington Trust Company (collectively referred to herein as "WTC") in 2008 or 2009;

c.   were aware of any or all policies or practices relating to matured loans and/or the waiver of such loans;

d.   were aware of the amount or volume of matured loans;

e.   were aware of the maturity dates for loans held by WTC;

f.   were aware of the use of reserves to pay interest;

g.   were aware of the treatment of past due loans by WTC;

h.   were aware that bank errors, payment processing delays and technical deficiencies were encompassed in the practice or policy relating to matured loans and/or the waiver of such loans;

i.   were aware of the "Surge" or "PSR" project;

j.   were aware of any discussion of or practice relating to extensions sought or obtained for matured loans;

k.   were aware of WTC's short-term extension project between Q3 2009 and Q2 2010;

l.   were aware of WTC's modified underwriting extension projects predating 2009;

m.   had or have knowledge that any financial institution treated any matured, interest current loans as not past due;

n.   advised WTC to raise capital during the MOU;

o.   had or have any policies that precluded WTC from disclosing information about the MOU or its soundness as a result of the examination;

p.   had any disagreement or difference of opinion with any other federal or state regulator regarding any of the above-listed issues; and/or

q.   had any disagreement or difference of opinion with WTC's auditor regarding any of the above-listed issues.

PAUL
HASTINGS

Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 3


2.  WTC's Auditor - Information that KPMG:

    a.  During the quarterly or year-end audits in 2008, 2009, or 2010:

        1.  had access to, printed or extracted information from the SHAW system;

        2.  was aware of any or all policies or practices relating to matured loans and/or the waiver of such loans;

        3.  was aware of the amount or volume of matured loans;

        4.  was aware of the maturity dates of loans held by WTC;

        5.  was aware of the use of reserves to pay interest;

        6.  was aware that bank errors, payment processing delays and technical deficiencies were encompassed in the practice or policy relating to matured loans and/or the waiver of such loans;

        7.  conducted upstream and downstream analysis of a sample of past due and non-performing  loans as part of its Workpaper A-60 analysis and otherwise;

        8.  was aware of WTC's treatment of past due loans;

        9.  was aware of the "Surge" or "PSR" project;

        10. was aware of any discussion of or practice relating to extensions sought or obtained for matured loans;

        11. was aware of WTC's short-term extension project between Q3 2009 and Q2 2010; and/or

        12. was aware of WTC's modified underwriting extension projects predating 2009.

    b.  Prior to KPMG's certification of the financial information at year-end 2009:

        1.  had access to, printed or extracted information from the SHAW system;

        2.  was aware of any or all policies or practices relating to matured loans and/or the waiver of such loans;

        3.  was aware of the amount or volume of matured loans;

        4.  was aware of the maturity dates of loans held by WTC;

        5.  was aware of the use of reserves to pay interest;

PAUL
HASTINGS

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 4

   6. was aware that bank errors, payment processing delays and technical
      deficiencies were encompassed in the practice or policy relating to matured loans
      and/or the waiver of such loans;

   7. conducted upstream and downstream analysis of a sample of past due and non-
      performing loans as part of its Workpaper A-60 analysis and otherwise;

   8. was aware of WTC's treatment of past due loans;

   9. was aware of the "Surge" or "PSR" project;

   10. was aware of any discussion of or practice relating to extensions sought or
       obtained for matured loans;

   11. was aware of WTC's short-term extension project between Q3 2009 and Q2
       2010; and/or

   12. was aware of WTC's modified underwriting extension projects predating 2009.

c. Prior to KPMG's certification of the 2010 Annual Report and recertification of the 2009
   financial information:

   1. had access to, printed or extracted information from the SHAW system;

   2. was aware of any or all policies or practices relating to matured loans and/or the
      waiver of such loans;

   3. was aware of the amount or volume of matured loans;

   4. was aware of the maturity dates of loans held by WTC;

   5. was aware of the use of reserves to pay interest;

   6. was aware that bank errors, payment processing delays and technical
      deficiencies were encompassed in the practice or policy relating to matured loans
      and/or the waiver of such loans;

   7. conducted upstream and downstream analysis of a sample of past due and non-
      performing loans as part of its Workpaper A-60 analysis and otherwise;

   8. was aware of WTC's treatment of past due loans;

   9. was aware of the "Surge" or "PSR" project;

   10. was aware of any discussion of or practice relating to extensions sought or
       obtained for matured loans;

PAUL
HASTINGS

Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 5

           11. was aware of WTC's short-term extension project between Q3 2009 and Q2 2010; and/or

           12. was aware of WTC's modified underwriting extension projects predating 2009.

    d. had any disagreement or difference of opinion with any other employee of KPMG regarding any of the above-listed issues; and/or

    e. had any disagreement or difference of opinion with any federal or state regulator regarding any of the above-listed issues.

3. <u>WTC Employees</u> - Information that any WTC employee believed, correctly or incorrectly, that:

    a. any Banking Regulators and/or KPMG:

        i. had access to, printed or extracted information from the SHAW system;

        ii. were aware of any or all policies or practices relating to matured loans and/or the waiver of such loans;

        iii. were aware of WTC's treatment of past due loans;

        iv. were aware of the amount or volume of matured loans;

        v. were aware of the maturity dates of loans held by WTC;

        vi. were aware of the use of reserves to pay interest;

        vii. conducted upstream and downstream analysis of any past due or non-performing loans;

        viii. were aware of the "Surge" or "PSR" project;

        ix. were aware of any discussion of or practice relating to extensions sought or obtained for matured loans;

        x. were aware of WTC's short-term extension project between Q3 2009 and Q2 2010; and/or

        xi. were aware of WTC's modified underwriting extension projects predating 2009.

    b. WTC's policy or practice relating to matured loans and/or the waiver of such loans pre-dated 2009, was an administrative process and/or was widely known;

    c. the policy or practice relating to matured loans and/or the waiver of such loans was considered an administrative issue;



Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 6

    d.   bank errors, payment processing delays and technical deficiencies were encompassed in the practice or policy relating to matured loans and/or the waiver of such loans;

    e.   WTC employees were not instructed to, nor did they, hide information relating to past due loan reporting from regulators, KPMG, internal auditors or others;

    f.   WTC employees were not committing a crime and/or the waiver practice was not improper;

    g.   past due loans current for interest were not treated as past due at other financial institutions;

    h.   WTC employees were acting in a good faith pursuit of loan extensions for matured loans;

    i.   there was a regular practice in place for the preparation of financial reports;

    j.   WTC had conducted modified underwriting and/or short-term extension projects prior to 2009;

    k.   WTC's modified underwriting and/or short-term extension projects prior to 2009 were not improper; and/or

    l.   WTC's short-term extension project between Q3 2009 and Q2 2010 was not improper.

4.   <u>WTC Policies</u> – All communications concerning, and references to, the monitoring of past due loans in the Monitoring Troubled Credits policy, which was included in Section 7.0 of the Wilmington Trust Corporation Credit Risk Management Policy Manual.

5.   <u>Definition of Past Due Loan</u> – Any information or belief establishing or tending to indicate that the term "past due loan" may be defined or interpreted in a manner that is in any way inconsistent with the definition contained in the Superseding Indictment, including but not limited to, any information contained in the files of the following:

    a.   WTC's Banking Regulators;

    b.   KPMG; and/or

    c.   the SEC.

B.    **<u>Representations Regarding the Government's Search for Brady Material</u>**

1.   <u>The Prosecution Team Includes Other Agencies</u> - A representation by the United States Attorney's Office for the District of Delaware ("U.S. Attorney's Office") that the U.S. Attorney's Office has conducted a review for <u>Brady</u> material within the "prosecution team" files, including material from all agencies that participated in the investigation of this matter (*e.g.*, the United


PAUL
HASTINGS

Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 7

States Attorney's Office, DOJ, SEC, Federal Reserve Bank, Department of the Treasury, FRB, FBI, IRS, and SIGTARP (collectively referred to herein as the "Prosecution Team")).

2. <u>Grand Jury Transcripts</u> - A representation by the U.S. Attorney's Office that the U.S. Attorney's Office has conducted a review of all Grand Jury transcripts for <u>Brady</u> material.

3. <u>The Government's Methodology</u> **-** A detailed description of the methodology employed by the U.S. Attorney's Office to determine which witness statements to produce to the Defendants and which to withhold.

C.    **Production of Additional Brady Material**

We have reason to believe that numerous witnesses have made exculpatory statements not included in the interview reports of federal agents produced by the U.S. Attorney's Office to the Defendants on October 21, 2015 ("Agents' Reports").  Accordingly, we request that the Government promptly produce the information requested below to the Defendants:

   a.   all notes taken by the Prosecution Team relating to interviews reflected in the Agents' Reports;

   b.   all Grand Jury transcripts for all witnesses referenced in the Agents' Reports;

   c.   all Agents' Reports, including those not yet produced, in unredacted form;

   d.   any documents provided by any witness or defendant to any agent, including, but not limited to, notes;

   e.   any recordings that include any discussions involving any witness or defendant;

   f.   the production of specific additional items referenced in the attached index, marked as Exhibit A;

   g.   all subpoenas and informal requests for documents and things issued by the Prosecution Team and/or Grand Jury;

   h.   all transmittal letters reflecting the documents produced by any person or entity to the Prosecution Team; and

   i.   all agreements and documents reflecting or related to understandings by which the Prosecution Team granted immunity or any other consideration to any person or entity.

D.    **Production of Giglio Material**

As set forth in the Memorandum for Department Prosecutors dated January 4, 2010 from Deputy Attorney General David W. Ogden, the Defendants request all <u>Giglio</u> information known by or in the possession of the Prosecution Team related to non-law enforcement witnesses, including, but not limited to:

PAUL
HASTINGS

Robert F. Kravetz. Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 8

    a.   prior inconsistent statements (including inconsistent attorney proffers);

    b.   statements or reports reflecting witness statement variations;

    c.   benefits provided to witnesses including:

        i.   dropped or reduced charges;

        ii.   immunity;

        iii.   expectations of downward departures or motions for reduction of sentence;

        iv.   assistance in state or local criminal proceedings;

        v.   considerations regarding forfeiture of assets;

        vi.   monetary benefits;

        vii.   non-prosecution agreements;

        viii.   deferred prosecution agreements;

        ix.   letters to other law enforcement officials (*e.g.*, state prosecutors or parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf; or

        x.   consideration or benefits to culpable or at risk third-parties.

    d.   other known conditions that could affect witness bias, such as:

        i.   animosity toward any Defendant;

        ii.   animosity toward a group of which any Defendant is a member or with which any Defendant is affiliated; or

        iii.   known but uncharged criminal conduct.

    e.   prior acts under Federal Rule of Evidence 608;

    f.   prior convictions under Federal Rule of Evidence 609; and/or

    g.   known substance abuse or mental health issues or other issues that could affect the witness' ability to perceive and recall events.


PAUL
HASTINGS

Robert F. Kravetz, Esq.
Lesley F. Wolf, Esq.
December 1, 2015
Page 9


Before we move the Court for an Order directing the production of <u>Brady</u> and <u>Giglio</u> material, we want to confer with you and confirm whether you intend to produce information in response to these requests. Please respond by December 4, 2015.  We look forward to speaking with you promptly concerning these requests.

Sincerely,

Kenneth M. Breen
of PAUL HASTINGS LLP

Attachment

cc: All Counsel for Defendants

**Exhibit A**

**United States v. David Gibson, et al., 15-CR-23 (RGA)**

**Attachment to December 1, 2015 Letter to Robert F. Kravetz, Esq. and Lesley F. Wolf, Esq. from Kenneth M. Breen, Esq. of Paul Hastings LLP**

A.   **Index of interview reports to be produced by the U.S. Attorney's Office:**

| Interviewee | Date of Interview |
|---|---|
| Todd Glandon | 10/17/2012 |
| Calvin Jaber | 12/12/2011 |
| Vidya Saligrama | 11/19/2012 |
| Vidya Saligrama | 10/8/2014 |

B.   **Specific documents to be produced by the U.S. Attorney's Office:**

1. Document referred to on page AGENTSRPRTS_001062 of the Agent Report of an interview of Brian Bailey on May 20, 2014 that is not listed with a Bates-reference ("Bailey reviewed a February 6, 2008 email between Hayes and Gallo with a subject of Parkside and an attached analysis with a heading of 'Parkside Equity'.");

2. Document referred to on page AGENTSRPRTS_001248 of the Agent Report of an interview of Ted Cecala on November 15, 2011 that is not listed with a Bates-reference ("Cecala was shown a copy of an email dated May 5, 2009 (copy attached) in which he uses the phrase 'misrepresentation to the market' and he stated that he had recently learned about possible issues involving appraised values and he was concerned about how appraised values were being used by the bank.");

3. Document referred to on page AGENTSRPRTS_000250 of the Agent Report of an interview of Ted Cecala on July 6, 2012 that is listed with an incomplete Bates-reference ("Cecala was then shown a section from WT's 2008 AR entitled Regional Banking, bates numbers 0212458-0212467, and was asked why the relationship banking model in WT did not change during the financial crisis as it had in similarly sized institutions.");

4. Document referred to in the Agent Report of an interview of John Depman on August 5, 2012 with the Bates-reference KPMG-WT-SEC-E0093236;

5. Document referred to in the Agent Report of an interview of Anthony D'Imperio on March 30, 2012 with the Bates-reference ONIX0026165;

6. Documents referred to in the Agent Report of an interview of Anthony D'Imperio on November 20, 2014 with the Bates-references WL-1160545 and WL-1160548;

7. Document referred to in the Agent Report of an interview of Marian Fean on April 17, 2013 with the Bates-reference WL-0805057;

8. Documents referred to in the Agent Report of Mico Slijepcevic on January 22, 2015 with the Bates-references WL-381851 and WL-492913; and

9. Document referred to in the Agent Report of Margery Stuart on November 19, 2012 with the Bates-reference ONIX00025654.

C.   **Additional items to be produced by the U.S. Attorney's Office:**

1. Page 6 of the Marian Fean Agent Report relating to an interview of Ms. Fean on April 17, 2013;

1

Exhibit A

<u>United States v. David Gibson, et al., 15-CR-23 (RGA)</u>

**Attachment to December 1, 2015 Letter to Robert F. Kravetz, Esq. and Lesley F. Wolf, Esq. from Kenneth M. Breen, Esq. of Paul Hastings LLP**

2. Notes provided to the Government by Calvin Jaber, as referenced in an Agent Report of an interview of Mr. Jaber on June 27, 2013;

3. Notes prepared by Brian Bailey, as referenced in an Agent Report of an interview of Mr. Bailey on June 30, 2014; and

4. The recording of the phone conversation between Joseph Terranova and Brian Bailey, as referenced in an Agent Report of a meeting with Mr. Terranova on January 30, 2013.

# Exhibit 5



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

Nemours Building        (302) 573-6277
1007 Orange Street, Suite 700    FAX (302) 573-6220
P.O. Box 2046
Wilmington, Delaware 19899-2046

December 7, 2015

<u>**VIA ELECTRONIC MAIL**</u>
Kenneth Breen, Esquire
Paul Hastings LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022

      Re:    <u>**United States v. David Gibson, et al. 15-cr-23-RGA**</u>

Dear Mr. Breen:

We write in response to your letters of December 1, 2015, which you submitted on behalf of Mr. Gibson, Mr. Harra, Mr. North, and Ms. Rakowski, with regard to Rule 16 Discovery Requests ("Rule 16 Letter") and *Brady* and *Giglio* information ("*Brady* Letter").

The government has not withheld documents and information that it is required to produce to defendants under Federal Rule of Criminal Procedure Rule 16(a)(1)(A)-(F). The documents produced to the defendants on September 11, 2015, October 21, 2015, and November 5, 2015, encompass the responsive documents and information in the possession, custody, and control of the United States Attorney's Office and the prosecution team, which includes the Federal Bureau of Investigation ("FBI"), the Internal Revenue Service Criminal Investigation Division ("IRS-CI"), the Office of Inspector General, Board of Governors of the Federal Reserve System ("Fed OIG"), and the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP").

Not only have we complied with our discovery obligations, we have exceeded them and have provided documents well beyond the scope of Rule 16 and our other duties at this stage of litigation. Of course, we continue to work to ensure that we comply with our ongoing discovery obligations, and we will provide other responsive materials we receive or locate.[1]

---

[1] Information regarding the documents and items identified in Exhibit A is provided in Attachment A to this letter. To the extent we have agreed to provide additional materials as set forth in that attachment, they are currently being prepared for production and we will forward as soon as they are ready. We do not, however, believe that these additional materials are within the scope of Rule 16. We will also provide a separate response regarding the production gaps

As we previously indicated, we recently received a large production of materials from the Bank, the cover letters of which are included as Attachment B. We have also noted a processing error, as identified in Ms. Guberman's October 9 email, with regard to certain KPMG electronic documents. While we believe you have already received these materials in the course of civil discovery, we are preparing these materials for production to you.

With regard to your specific request for certain materials in the possession, custody, or control of Banking Regulators, KPMG, and the SEC, we cannot provide these documents to you, as these entities are not part of the prosecution team. To the extent we received any such Rule 16 materials from any of these third party entities, whether it be through issuance of a grand jury subpoena, access request, or any other mechanism, they have already been included in materials previously produced to you.[2]

We are also able to confirm that we have complied with the requirements of Rule 16(a)(1)(A) and (B) as to statements made by the defendants. The three specific requests articulated in section III.B of your Rule 16 letter fall outside of the scope of Rule 16 obligations and are governed by either the *Jencks* Act or *Brady/Giglio* requirements.

As we have stated previously and repeatedly, we intend to comply with our obligations pursuant to *Brady* and *Giglio*, as set forth under the law. We have already produced materials to you in accordance with these requirements and fully understand that our obligations remain ongoing. The requests in the *Brady* Letter to consent to certain categories of materials exceeds the scope of any known discovery obligation, or departmental guidance, as do your demands for the production of internal processes and broad categories of additional documents.

To the extent you "have reason to believe that numerous witnesses have made exculpatory statements not included" in the interview reports already provided to you, we disagree, but would be willing to discuss the production of any *specific* information you believe we have failed to timely produce.

Very Truly Yours,
CHARLES M. OBERLY, III
United States Attorney

By: /s/ Lesley F. Wolf
Lesley F. Wolf
Robert F. Kravetz
Jamie M. McCall
Assistant United States Attorneys

cc: Counsel for all Defendants

---

identified by Ms. Guberman's email of October 9, 2015.

[2] As noted above, KPMG-WT-SEC-E0088583 through E00119478 were subject to a processing error and will be provided to you.

## ATTACHMENT A

**Items Requested by Defendants:**

A. *Interview Reports of Todd Glandon (10/17/2012), Calvin Jaber (12/12/2011) and Vidya Saligrama (11/19/2012 and 10/8/2014)*

   While the government does not believe that these reports are currently subject to production, the government will produce these interview reports.

B. *Requests for Specific Documents:*

   1. *Document Referred to on AGENTSRPRTS_001062*

      Document to be produced.

   2. *Document Referred to on AGENTSRPRTS_001248*

      Previously produced at WL-0114451.

   3. *Document Referred to on AGENTSRPRTS_000250*

      Previously produced at WTC-USAO-0212458.

   4. *KPMG-WTC-SEC-E0093236*

      Part of processing error creating a gap in Bates range KPMG-WTC-SEC-E88583 through 119478. Entirety of range to be produced.

   5. *ONIX0026165*

      While the documents bearing the Bates prefix ONIX are outside of the scope of Rule 16 and other discovery obligations, the government will produce these documents.

   6. *WL-1160545 and WL-1160547*

      Previously produced as part of documents found at WL-1160544 and WL-1160547.

   7. *WL-0805057*

      Previously produced at that Bates number, as an attachment to WL-0805054.

   8. *WL-381851 and WL-492913*

      Previously produced at those Bates numbers as excel spreadsheets.

1

9. *ONIX00025654*

While the documents bearing the Bates prefix ONIX are outside of the scope of Rule 16 and other discovery obligations, the government will produce these documents.

C. *Additional Items*

1. *Page 6 of the Fean Report*

   Page was inadvertently omitted due to scanning error, will be produced.

2. *Notes provided to the government by Calvin Jaber*

   Notes subject to review by filter attorney. Non-privileged information will be produced.

3. *Notes prepared by Brian Bailey as referenced in an Agent Report*

   The government is not in possession, custody, or control of those notes. Mr. Bailey utilized those notes during the course of the interview with the government on June 30, 2014, but the government neither viewed or collected those notes.

4. *Recording of phone conversation between Joseph Terranova and Brian Bailey on January 30, 2013, as referenced in an Agent Report*

   Transcript of telephone conversation to be produced.

**ATTACHMENT B**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-3483
DIRECT FAX
(917) 777-3483
EMAIL ADDRESS
CHRISTOPHER.GUNTHER@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

November 24, 2015

**By Federal Express**

Lesley Wolf, Esq.
Robert Kravetz, Esq.
Assistant United States Attorneys
United States Attorney's Office
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

RE: Wilmington Trust Corporation

Dear Ms. Wolf and Mr. Kravetz:

We write on behalf of our client, Wilmington Trust Corporation ("Wilmington Trust" or the "Bank"). Enclosed please find a disk containing documents labeled WTC-USAO-02-0114332 through WTC-USAO-02-0142617, which are responsive to Ms. Wolf's e-mail of January 23, 2015, as well as our recent communications.

The enclosed documents contain an initial set of meeting invitations and acceptances between January 1, 2009 and November 1, 2010 that are associated with the following custodians: Ted Cecala, Robert Harra, David Gibson, William North, and Kevyn Rakowski. As discussed, these documents are intended to supplement our production of Microsoft Outlook calendars for these individuals, which we made on October 30, 2015. We will produce the remainder of these documents as soon as we

Lesley Wolf, Esq.
Robert F. Kravetz, Esq.
November 24, 2015
Page 2

finish reviewing them. For your convenience, at Appendix A we have provided a
table breaking down this production by custodian.

    Wilmington Trust does not intend to waive any applicable privileges it might
have in the documents, and has withheld documents on the basis of the attorney-
client privilege and work product doctrine. In the case of any inadvertent production
of privileged material, we ask that you return it immediately upon identifying it.

    We understand that this production will be protected from disclosure by the
restrictions in Fed. R. Crim. P. 6(e). Please call with any questions.

                                        Sincerely,

                                        *Chris Gunther* / CWH

                                        Christopher J. Gunther

Enclosure

## Appendix A

Bates Ranges for November 24, 2015 Production Provided by Custodian

| Custodian | Bates Range |
|---|---|
| Ted Cecala | WTC-USAO-02-0114332 - WTC-USAO-02-0117552 |
| David Gibson | WTC-USAO-02-0117553 - WTC-USAO-02-0123824 |
| Robert Harra | WTC-USAO-02-0123825 - WTC-USAO-02-0130391 |
| William North | WTC-USAO-02-0130392 - WTC-USAO-02-0140318 |
| Kevyn Rakowski | WTC-USAO-02-0140319 - WTC-USAO-02-0142617 |

# VENABLE® LLP

210 W. PENNSYLVANIA AVENUE   SUITE 500   TOWSON, MD 21204
T 410.494.6200   F 410.821.0147   www.Venable.com

James A. Dunbar
410.494.6208
Facsimile 410.821.0147
jbdunbar@venable.com

November 23, 2015

*VIA EMAIL*
*AND U.P.S. OVERNIGHT DELIVERY*

Robert F. Kravetz, Esquire
United States Attorney's Office
Nemours Buildings
1007 North Orange Street – Suite 700
Wilmington, Delaware 19801

      Re:    In re Wilmington Trust Securities Litig.
              United States District Court for the District of Delaware
              Civil No.: 10-cv-990-SLR-SRF

Dear Mr. Kravetz,

      Enclosed in response to your subpoena is a thumb drive that should contain the documents produced by Venable on behalf of Wilmington Trust in the civil matter on October 30, 2015. The thumb drive should contain 9,060 documents and 62,368 pages.

      The password for the thumb drive is Pr@ct3ch.

      Please let me know if you have any questions. Thank you.

              Very truly yours,

              James A. Dunbar

Enclosure

cc:    Christopher Gunther, Esquire (*via email only*)

**CONFIDENTIAL**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-3483
DIRECT FAX
(917) 777-3483
EMAIL ADDRESS
CHRISTOPHER.GUNTHER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

November 20, 2015

**By Federal Express**

Lesley Wolf, Esq.
Robert Kravetz, Esq.
Assistant United States Attorneys
United States Attorney's Office
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

RE:    Wilmington Trust Corporation

Dear Ms. Wolf and Mr. Kravetz:

We write on behalf of our client, Wilmington Trust Corporation ("Wilmington Trust" or the "Bank"). Enclosed please find a disk containing documents labeled WTC-USAO-02-0113339 through WTC-USAO-02-0114331, which are responsive to your subpoena dated January 29, 2013 (reference number 11-4-RFK/LFW-Q-104) as well as our recent communications.

By e-mail dated July 24, 2015 and in other subsequent communications, you requested copies of "Master Change in Terms Agreements" executed around March 2010, and referred to documents suggesting that 176 loans may have been extended during this period. The documents in today's production are responsive to this request.

Lesley Wolf, Esq.
Robert F. Kravetz, Esq.
November 20, 2015
Page 2


Wilmington Trust does not intend to waive any applicable privileges it might have in the documents, and has withheld documents on the basis of the attorney-client privilege and work product doctrine. In the case of any inadvertent production of privileged material, we ask that you return it immediately upon identifying it.

We understand that this production will be protected from disclosure by the restrictions in Fed. R. Crim. P. 6(e). Please call with any questions.

Sincerely,

Chris Gunther / CWH

Christopher J. Gunther


Enclosure

# Skadden, Arps, Slate, Meagher & Flom LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-3483
DIRECT FAX
(917) 777-3483
EMAIL ADDRESS
CHRISTOPHER.GUNTHER@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

October 30, 2015

**By Federal Express**

Lesley Wolf, Esq.
Robert Kravetz, Esq.
Assistant United States Attorneys
United States Attorney's Office
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

RE:     Wilmington Trust Corporation

Dear Ms. Wolf and Mr. Kravetz:

We write on behalf of our client, Wilmington Trust Corporation ("Wilmington Trust" or the "Bank"). Enclosed please find a disk containing documents labeled WTC-USAO-02-0112380 through WTC-USAO-02-0113338, which relate to requests made in the course of our recent communications, including your letter dated August 27, 2015.

By e-mail dated July 24, 2015 and in subsequent communications, including the August 27 letter, you requested copies of "Master Change in Terms Agreements" or other loan extension documents executed around March 2010, and specifically referred to documents indicating that 176 loans were extended during this period. Documents labeled WTC-USAO-02-0112380 through WTC-USAO-02-0112424 in today's production are additional loan extensions from the relevant period. We are

Lesley Wolf, Esq.
Robert F. Kravetz, Esq.
October 30, 2015
Page 2

continuing to work with our client to identify any additional loan extensions from this period that might be responsive to your request.

Also in your August 27 letter, you requested performance evaluations for Ted Cecala and Robert Harra. We understand that Mr. Cecala prepared annual performance objectives and evaluations for himself and his direct reports. We are including these materials for the years 2007 through 2009 in this production at WTC-USAO-02-0112425 through WTC-USAO-02-0112485 and WTC-USAO-02-0113311 through WTC-USAO-02-0113336.

Regarding training sessions attended by Ted Cecala, Robert Harra, Kevyn Rakowski, Bill North and David Gibson between 2007 and 2010, we have previously responded by e-mail dated March 20, 2015 and by letter dated March 31, 2015, in which we provided details on training sessions relating to SEC filings attended by Kevyn Rakowski and David Gibson. Today's production includes two spreadsheets (WTC-USAO-02-0113337 and WTC-USAO-02-0113338) that the Bank maintained during the relevant period, populated with information regarding various training sessions attended by Wilmington Trust employees. Should you require additional information on any of the listed training sessions, please let us know and we will attempt to locate this information.

Finally, you have requested the production of Microsoft Outlook calendars for David Gibson, Kevyn Rakowski, Robert Harra, Ted Cecala, and Bill North from January 1, 2009 through November 1, 2010. Today's production includes the versions of these calendars that we have been able to generate, based on the data available to the Bank. Please find a calendar for Gibson at WTC-USAO-02-0112486 through WTC-USAO-02-0112650; for Rakowski, at WTC-USAO-02-0112651 through WTC-USAO-02-0112815; for Harra, at WTC-USAO-02-0112816 through WTC-USAO-02-0112980; for Cecala, at WTC-USAO-02-0112981 through WTC-USAO-02-0113145; and for North, at WTC-USAO-02-0113146 through WTC-USAO-02-0113310. However, having reviewed these documents, we are aware that these calendars do not incorporate all of the information included in meeting invitations and acceptances that have been collected by the Bank in response to your other document requests. As a consequence, we are preparing to produce the meeting invitations and acceptances that we have collected for these custodians, in order to supplement the calendars that we are able to produce at this time.

Wilmington Trust does not intend to waive any applicable privileges it might have in the documents, and has withheld documents on the basis of the attorney-client privilege and work product doctrine. In the case of any inadvertent production of privileged material, we ask that you return it immediately upon identifying it.

Lesley Wolf, Esq.
Robert F. Kravetz, Esq.
October 30, 2015
Page 3

We understand that this production will be protected from disclosure by the
restrictions in Fed. R. Crim. P. 6(e).  Please call with any questions.

Sincerely,

*Chris Gunther*  1RJB

Christopher J. Gunther

Enclosure

# Exhibit 6

BRENDAN V. SULLIVAN, JR.
JERRY L. SHULMAN
ROBERT B. BARNETT
JOHN J. BUCKLEY, JR.
DOUGLAS R. MARVIN
JOHN K. VILLA
BARRY S. SIMON
KEVIN T. BAINE
STEPHEN L. URBANCZYK
PHILIP J. WARD
F. WHITTEN PETERS
JAMES A. BRUTON, III
PETER J. KAHN
MICHAEL S. SUNDERMEYER
JAMES T. FULLER, III
DAVID D. AUFHAUSER
BRUCE R. GENDERSON
F. LANE HEARD III
STEVEN R. KUNEY
PAUL MOGIN
MARK S. LEVINSTEIN
DANIEL F. KATZ
WILLIAM R. MURRAY, JR.
STEPHEN D RABER
DAVID C. KIERNAN
LON E. MUSSLEWHITE
HEIDI K. HUBBARD
GEORGE A. BORDEN
ROBERT J. SHAUGHNESSY
DAVID S. BLATT
DANE H. BUTSWINKAS
CHARLES D. NIEMEIER
PAUL K. DUEFFERT
R. HACKNEY WIEGMANN

ROBERT M. CARY
KEVIN M. HODGES
DAVID M. ZINN
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
KEVIN M. DOWNEY
THOMAS G. HENTOFF
PAUL B. GAFFNEY
EMMET T. FLOOD
ROBERT A. VAN KIRK
MARCIE R. ZIEGLER
KENNETH C. SMURZYNSKI
JOHN E. SCHMIDTLEIN
CRAIG D. SINGER
J. ANDREW KEYES
M. ELAINE HORN
ENU MAINIGI
MICHAEL F. O'CONNOR
MARGARET A. KEELEY
EDWARD J. BENNETT
TOBIN J. ROMERO
BETH A. LEVENE
THOMAS G. WARD
WILLIAM T. BURKE
JOHN E. JOINER
NICHOLAS J. BOYLE
ADAM L. PERLMAN
ANDREW W. RUDGE
DENEEN C. HOWELL
ALEX G. ROMAIN
DAVID A. FORKNER
JONATHAN M. LANDY
CHRISTOPHER N. MANNING
RYAN T. SCARBOROUGH

JENNIFER G. WICHT
STEPHEN D. ANDREWS
KANNON K. SHANMUGAM
THOMAS H. L. SELBY
KEVIN HARDY
EDWARD C. BARNIDGE
JOSEPH M. TERRY
AARON P. MAURER
F. GREG BOWMAN
ANA C. REYES
JONATHAN B. PITT
DAVID I. BERL
ELLEN E. OBERWETTER
EDWARD C. REDDINGTON
DANIEL P. SHANAHAN
VIDYA ATRE MIRMIRA
JESSAMYN S. BERNIKER
RICHMOND T. MOORE
KENNETH J. BROWN
LUBA SHUR
PATRICK H. KIM
WILLIAM P. ASHWORTH
LANCE A. WADE
CHARLES DAVANT, IV
DOV P. GROSSMAN
HOLLY M. CONLEY
MATTHEW V. JOHNSON
CARL R. METZ
JOHN McNICHOLS
DAVID S. KURTZER-ELLENBOGEN
PAUL E. BOEHM
STEPHEN J. FUZESI
KATHERINE M. TURNER
JESSE T. SMALLWOOD

STANLEY E. FISHER
JOHN S. WILLIAMS
C. BRYAN WILSON
SAMUEL B. DAVIDOFF
AMANDA M. MacDONALD
BETH A. STEWART
STEVEN M. PYSER
GRANT A. GEYERMAN
DAVID M. KRINSKY
SIMON A. LATCOVICH
BENJAMIN M. GREENBLUM
SARAH F. TEICH
ADAM D. HARBER
C. J. MAHONEY
ASHLEY W. HARDIN
NEELUM J. WADHWANI
WILLIAM L. DOFFERMYRE
R. KENNON POTEAT III

———————
OF COUNSEL
JEREMIAH C. COLLINS
JOHN W. VARDAMAN
PAUL MARTIN WOLFF
JOHN G. KESTER
WILLIAM E. McDANIELS
RICHARD M. COOPER
ROBERT P. WATKINS
DAVID E. KENDALL
TERRENCE O'DONNELL
GERSON A. ZWEIFACH
EVA PETKO ESBER

LAW OFFICES
# WILLIAMS & CONNOLLY LLP®
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

www.wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 15, 2016

*Via E-mail*

Lesley F. Wolf, Esq.
United States Attorney's Office
District of Delaware
Nemours Building
1107 N. Orange Street, Suite 700
Wilmington, DE 19899-2046

> Re:   *United States v. Wilmington Trust Corp., et al.*,
>       Criminal Action No. 15-cr-00023-RGA,
>       <u>United States District Court for the District of Delaware</u>

Dear Ms. Wolf:

On behalf of Wilmington Trust Corporation ("WTC"), we are writing to follow up on our in-person meet and confer, and to respond to the government's February 29 letter.

## I.     Historical Documents

The government's February 29 letter identifies all of the documents that the government has obtained in connection with this matter and that it is not producing at this time.  We understood from the meet and confer that the government does not intend to offer any statements of Mr. Zimmerman at trial.  If the government does not intend to offer evidence of his statements or alleged conduct, and the same is true regarding "his associates," the "third party vendors," the "partners and associates," the "bank employees, their spouses or business partners," the "third-party developer," the "third-parties connected to the developer," James Ladio and MidCoast Bank, all of whom are referenced in the government's February 29 letter, WTC will not take issue with the government's withholding of the identified documents at this time, subject to the government's obligations under *Brady* and *Giglio*.

Lesley F. Wolf, Esq.
March 15, 2016
Page 2

   We understand that the government will be conducting a quality check to make sure the government has not overlooked any documents.  Please let us know when that check has been completed.

## II.   Documents and Information in the Possession, Custody or Control of the Government

   The documents and information[1] that the government must produce pursuant to Rule 16 and *Brady* include not only documents and information in the physical possession of your office, but also documents and information in the possession, custody, or control of the Department of Justice and federal and state agencies allied with the prosecution, as well as documents and information in the possession, custody, or control of any person or entity with the legal obligation to cooperate with the government.  Specifically, WTC requests documents and information in the possession, custody, or control of the following offices and agencies, all of which were part of the prosecution team in this matter:  the Department of Justice, the Federal Bureau of Investigation ("FBI"), the Internal Revenue Service ("IRS"), the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), the Securities and Exchange Commission ("SEC"), and the Board of Governors of the Federal Reserve System and the Federal Reserve Banks (including the Federal Reserve Bank of New York and the Federal Reserve Bank of Philadelphia) (collectively, "Federal Reserve").

   We have reached an impasse regarding which documents are in the possession, custody, or control of the government, but we want to make sure we understand where the government has drawn the line.  We understand that the government does not contest that the FBI, IRS, SIGTARP, and other components of the Department of Justice, including the Criminal Division, are part of the prosecution team.  The government does take issue with certain parts of the Federal Reserve and with the SEC.

   **Federal Reserve-OIG.**  The government concedes that the Federal Reserve-OIG "is part of the prosecution team."  Accordingly, please confirm that the government has searched the documents in the actual possession of the Fed-OIG and, with respect to such documents: (1) is not withholding any historical documents; (2) is not withholding any memoranda of interviews of the defendants (including WTC); (3) is not withholding any notes of interviews of the defendants (including WTC); and (4) has reviewed or will review all other notes, work product, and case-related communications for *Brady* and *Giglio* material.

---

[1]   As we discussed during the meet and confer, the government's *Brady* obligation is not limited to documents, but extends to information in any form, including undocumented oral information.  *See, e.g., United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form.").

Lesley F. Wolf, Esq.
March 15, 2016
Page 3

**Federal Reserve.**  Notwithstanding the participation of, and assistance by, the Federal Reserve in the investigation and prosecution of this matter, the government objects to producing documents within the Federal Reserve that are not in the actual possession of the Federal Reserve-OIG.  This is inconsistent with the government's obligations under *Brady* and Rule 16 because, as we explained, these documents are in the possession, custody and control of the government.  It does not appear that the government is willing to reconsider this issue, so we will raise it with the Court.

**SEC.**  We also disagree with the government's refusal to produce certain SEC documents.  But, so we understand the scope of the dispute, please confirm that all historical documents obtained by SEC Enforcement staff have been produced, and please confirm that the SEC did not take any investigative testimony in this matter.  We understand that the government will not produce documents in the physical possession of SEC Corporate Finance and will not review or produce any SEC Enforcement staff work product (other than interview notes as described below).

### III.  Grand Jury Testimony, Interview Memoranda and Interview Notes

During the meet and confer, we asked the government to identify categories of grand jury testimony, interview memoranda or interview notes that it is withholding now and that will not be produced at the Jencks deadline.  Based on our discussions, here is where we understand the government has drawn the lines.

**Grand Jury Transcripts**.  There were approximately 20 grand jury witnesses.  Now that the protective order for grand jury transcripts has been entered, the government has produced all grand jury transcripts for current and/or former WTC/M&T Bank employees.  Please confirm that the government will also produce any statement by any federal agent before the grand jury that referenced any statement by any current and/or former WTC/M&T Bank employee.

For other witnesses, the government will review the transcripts for *Brady* and *Giglio* material.  Please let us know when the government anticipates completing its review, and confirm that the government will be producing any *Brady* material promptly after identifying it.  For any testifying witnesses, the government will produce the grand jury transcripts by the agreed upon Jencks deadline.

**Interview Memoranda.**  The government agreed to produce all memoranda of interviews of current and/or former WTC/M&T Bank employees.  The government will produce the interview memoranda of Federal Reserve witnesses by the agreed upon Jencks deadline.  The defendants should expect to see approximately 15 additional interview memoranda.  Please confirm that the government is reviewing these memoranda for *Brady* and *Giglio* material; let us know when the government anticipates completing its review; and confirm that the government will be producing any *Brady* material promptly after identifying it.  Also, please let us know if

Lesley F. Wolf, Esq.
March 15, 2016
Page 4

the government is withholding interview memoranda for any categories of witnesses beyond
Federal Reserve witnesses.

 **Interview Notes.**  The government agreed to produce all agent notes of interviews of
current and/or former WTC/M&T Bank employees.  Please confirm that these include FBI,
SIGTARP, Federal Reserve-OIG, and IRS agent notes.  The government does not presently
intend to produce, but will conduct a *Brady/Giglio* review of AUSA notes, and of agent notes of
witnesses who are not current and/or former WTC/M&T Bank employees.  Please let us know
when the government anticipates completing its review, and confirm that the government will be
producing any *Brady* material promptly after identifying it.  As we discussed, it may be easier
and more prudent to produce the notes in their entirety, which we understand the government is
considering for agent notes of witnesses who are not current and/or former WTC/M&T Bank
employees.

 **SEC Interview Notes and Memoranda.**  The government agreed to produce SEC notes
(including attorney notes) of interviews of current and/or former WTC/M&T Bank employees
that were conducted before the United States Attorney's Office investigation began.  The
government also agreed to conduct a *Brady/Giglio* review of SEC notes (including attorney
notes) of jointly conducted interviews.  Presumably, then, there are some witness interviews that
fall into different categories and for which the government will not be producing SEC notes or
reviewing them for *Brady/Giglio* material.  Please identify those witnesses.  Also, please let us
know whether the SEC prepared any interview memoranda and, if so, what position the
government takes with respect to such memoranda.

## IV. Communications with Witnesses or Witness Counsel

 The government will produce substantive communications with testifying witnesses or
their counsel at the agreed upon Jencks/*Giglio* deadline.

## V. Agent Reports and Case-Related Communications

 The government does not believe that there are any agent reports beyond interview
memoranda.  Please confirm that this is the case.  Further, please confirm that the government is
reviewing any case-related internal memoranda or communications for *Brady/Giglio* material.

## VI. KPMG Subpoenas

 During the meet and confer, the government confirmed that KPMG did not have a
cooperation agreement.  We understand this to include cooperation agreements with the SEC and
or the Department of Justice.  Please let us know if this understanding is incorrect.  We asked the
government to produce any subpoenas issued to KPMG or to confirm that no subpoenas were
issued to KPMG.  We ask the government again to respond to this request because it may obviate

Lesley F. Wolf, Esq.
March 15, 2016
Page 5

the need for any Rule 16 motion practice regarding KPMG, as the government has represented that it produced all documents obtained from KPMG.

**VII.    Suppression Issues**

We understand from our meet and confer that there are no potential suppression issues in this case because no documents or items were obtained by warrant, search and seizure, or electronic surveillance.  Please let us know if our understanding is mistaken.  The government has produced what purport to be consensual recordings.

*        *        *

If we have not accurately described the government's position with respect to any of the issues set forth above, please let us know.  Also, please let us know if you would like to schedule a call to discuss any of these matters.

Very truly yours,

Tobin J. Romero

# Exhibit 7



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*            *(302) 573-6277*
*1007 Orange Street, Suite 700*      *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

March 21, 2016

**BY EMAIL AND FIRST CLASS MAIL**

Tobin J. Romero
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

> Re:   **United States v. Wilmington Trust, et al.**
>        **Criminal Action No. 15-23 (RGA)**

Dear Mr. Romero:

We write in response to your letter of March 15, 2016 regarding the status of any outstanding discovery issues.   Based upon the meet and confer and our recent correspondence, it appears we have made significant progress in narrowing the scope of our disputes.

**I.      Historical Documents**

Your letter correctly summarizes the government's position with regard to the historical materials.   At present, we do not anticipate offering any statements of Mr. Zimmerman, Mr. Ladio, or those otherwise identified in your letter.   Accordingly, we understand that this issue has been resolved.

The quality check referred to in your letter is currently underway and we anticipate it will be completed within the next several weeks.   In the event we locate any additional discoverable materials as a result of this check, they will be promptly produced to you.

**II.     The Scope of the Prosecution Team and the Meaning of Possession, Custody, or Control**

The most salient area of disagreement continues to center on the scope of the government's discovery obligations as to third-parties and the meaning of "possession, custody, or control" under Rule 16.   You correctly note that we recognize the FBI, SIGTARP, IRS-Criminal Investigative Division ("IRS-CI"), Federal Reserve-OIG, and other components of the Department

of Justice as a part of the prosecution team.[1]  We have reviewed materials and produced discovery, both under Rule 16 and Brady, consistent with the role of those entities, including Federal Reserve-OIG, as a part of the prosecution team.

You correctly also state that we dispute the inclusion of the Federal Reserve and SEC as part of the prosecution team, as well as the scope of the government's discovery obligations with regard to those entities.  We have provided you with all historical documents we received, pursuant to an access request, from the SEC (including notes of defendant interviews predating the U.S. Attorney's investigation) and are unaware of any investigative testimony taken in this matter.  As previously agreed, although we do not include them as a part of the prosecution team, we will review (1) notes taken by Federal Reserve and SEC attorneys during any interviews conducted jointly with our office and (2) any memoranda prepared after those interviews capturing witness statements.   If there is any Brady material in the notes or the memoranda, we will produce it to you.

### III.    Grand Jury Transcripts and Interview Notes

We have produced the grand jury transcripts of testimony given by current and former Wilmington Trust and M&T employees.   We will further review additional transcripts and produce any additional statements that constitute Rule 16 materials of other witnesses (including federal agents) that incorporate the statements of any current or former Wilmington Trust and M&T employee(s).   We are, of course, aware of our Brady and Giglio obligations with regard to other grand jury transcripts and will produce any additional materials as required.

The government has produced, consistent with Rule 16 and Brady, reports associated with more than 160 witness interviews.   During the meeting we estimated that we would expect to produce approximately 15 additional interview reports at the Jencks deadline and still believe that to be an accurate estimate.[2]

As your letter also notes, we have agreed to produce all agent notes of interviews of current and former Wilmington Trust and M&T employees.   Additional agent notes of other witness interviews and attorney notes will be reviewed and produced to the extent required by Rule 16, Brady, Giglio, and Jencks.

The government will produce the SEC notes of interviews conducted prior to the commencement of the United States Attorney's parallel investigation, to the extent those notes were provided to the government pursuant to the access request and are in its actual possession.  As set forth above, we have also agreed to review SEC notes of any interview jointly conducted with the United States Attorney's Office and to produce any Brady or Giglio information contained within those notes.  Your letter also inquires about potential interviews conducted solely by the SEC post-dating our Office's investigation.   We are unaware of any such interviews.

---

[1] We do not agree that the IRS, in its entirety, is a part of the prosecution team, but do include IRS-Criminal Investigation ("IRS-CI").

[2] This estimate does not include reports or notes that may be prepared following pretrial witness preparation sessions.

**IV.     Communications with Witnesses or Witness Counsel**

Your letter states that the government will produce "substantive communications with testifying witnesses or their counsel" at the Jencks or Giglio deadline.  While we recognize our obligations with regard to witness communications, we wish to clarify how you define "substantive communications" with counsel before we consent to the production of any such materials, as we may disagree on the scope of what falls within that term.

**V.      Agent Reports and Case-Related Communications**

To the extent that agent investigative reports, other than interview reports, have been written in connection with this matter, such reports will be produced to the extent that their production is called for by Brady, Giglio, or Jencks.  The government will also review any case-related internal memoranda or communications for Brady/Giglio material.

**VI.     KPMG Subpoenas**

We are able to confirm that we did not issue any subpoenas to KPMG, and that KPMG does not have any cooperation agreement with this office or the Department of Justice as it relates to the instant matter.   We are also unaware whether KPMG has any such agreement with the SEC.

**VII.    Suppression Issues**

We can also confirm that, beyond the consensual recordings referenced in your letter, no materials were obtained through electronic surveillance.  The government executed search warrants in connection with the Zimmerman and Ladio investigations, but not in connection with the Wilmington Trust investigation.

**VIII. Conclusion**

Finally, we again confirm that we are aware of our obligations under Rule 16, <u>Brady</u>, <u>Giglio</u>, and <u>Jencks</u>.   We believe we have not only complied with those obligations to date, but have exceeded them.   As we move forward, we remain mindful that these obligations are ongoing and fully intend to comply with them.   We continue to work diligently to satisfy our obligations and again, any discoverable information will be promptly produced to you.

We are happy to discuss any of these issues further.

Very truly yours,

CHARLES M. OBERLY, III
United States Attorney


BY: <u>*/s/Lesley F. Wolf*</u>
    Lesley F. Wolf
    Robert F. Kravetz
    Jamie M. McCall
    Alexander P. Ibrahim
    Assistant United States Attorneys



cc (via Email):    Kenneth Breen, Esq.
                   Bart Dalton, Esq.
                   Michael Kelly, Esq.
                   Henry Klingeman, Esq.
                   Andrew Lawler, Esq.
                   David Wilks, Esq.

# Exhibit 8

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _____09/25/2014_____

JOSEPH TERRANOVA, white male, █████████████████

was interviewed at the United States Attorney's Office for the District of Delaware (USAO-Delaware), 1007 N. Orange Street, Suite 700, Wilmington, Delaware pursuant to a previously executed proffer agreement. TERRANOVA was represented by his attorney PATRICK J. COTTER, from the law firm BARNES & THORNBURG, LLC, One North Wacker Drive, Chicago, Illinois.

In addition to TERRANOVA and his counsel, the following individuals were present and participated in the interview:

- Robert Kravetz, Assistant United States Attorney (AUSA) for the District of Delaware
- Lesley Wolf, AUSA for the District of Delaware
- Dave Stier, Senior Investigative Analyst, Special Inspector General for the Troubled Asset Relief  Program (SIGTARP)
- Ilana Eisenstein, AUSA for the District of Delaware (via telephone)
- Ashley King, Attorney, Federal Reserve Board, Washington, D.C. (via telephone)
- SA Greg S. Mrozek, FBI-Wilmington Resident Agency
- SA David F. Bole, FBI-Dover Resident Agency

<u>PETER HAYES</u>

TERRANOVA became Peter Hayes' supervisor beginning in January 2008 when he became the Division Manager of the Delaware Commercial Real Estate (CRE) Section for Wilmington Trust Company (WTC).  Prior to that time, TERRANOVA had no supervisor responsibilities over HAYES in that they were both Group Leaders within CRE.  As Division Manager, TERRANOVA supervised several groups including Hayes' group, the Loan Administration group and other Relationship Managers (RMs).  TERRANOVA initially supervised approximately 16 individuals which later increased to 18.  When TERRANOVA first became Division Manager, he met with all of the RMs in order to get a sense of their customers.

When working as Division Manager, TERRANOVA was familiar with the major relationships Hayes was responsible for but he was not involved in the day to day managing of those relationships.   TERRANOVA was asked if he ever

---

Investigation on  _07/01/2014_  at  Wilmington, Delaware, United States (In Person)

File #  29O-BA-111829-302                                        Date drafted  _07/10/2014_

by  Greg S. Mrozek, David F Bole

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

AGENTSRPRTS_000694

# Exhibit 9

FD-302 (Rev. 5-8-10)

- 1 of 25 -



UNCLASSIFIED//FOUO

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    06/04/2014

BRIAN D. BAILEY, white male, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was interviewed at the United States Attorney's Office, District of Delaware, 1007 Orange Street, Suite 700, Wilmington, DE, pursuant to the terms of an executed proffer agreement. BAILEY was represented by attorneys Richard R. Wier and Jack L. Gruenstein, from the law firm Marshall Dennehy Warner Coleman & Goggin, 1220 N. Market Street, 5th Floor, Wilmington, DE., 19801.

In addition to BAILEY and his counsel, the following individuals were present and participated in the interview:

- Robert Kravetz, Assistant United States Attorney (AUSA) for the District of Delaware
- Lesley Wolf, AUSA for the District of Delaware
- Ilana Eisenstein, AUSA for the District of Delaware
- Brendan Clark, Special Agent, Special Inspector General for the Troubled Asset Relief Program (SIGTARP)
- Dave Steir, Senior Investigative Analyst, SIGTARP, (Telephonically)
- Margaret Spillane, Attorney, U.S. Securities and Exchange Commission, Enforcement Division, New York Regional Office (ED-SEC)
- Thomas Smith, Attorney, ED-SEC, New York Regional Office, (telephonically)
- Jason Gonzales, Attorney, Federal Reserve Board, Washington, D.C.
- Ashley King, Attorney, Federal Reserve Board, Washington, D.C.
- SA Greg S. Mrozek, FBI-Wilmington Resident Agency
- SA David F. Bole, FBI-Dover Resident Agency

Interview commenced at approximately 10:15 am.

At the commencement of the proffer session BAILEY received and executed proffer letters from the USAO, SEC and Federal Reserve Board (FRB).

## AREAS OF INTEREST

BAILEY was initially told that the substance of the proffer session would cover overlapping areas of interest between the USAO, SEC and FRB. The time period of interest would be between 2006 and 2010 and would cover the loan growth at the Wilmington Trust Company (hereinafter referred to as

UNCLASSIFIED//FOUO

| | | | |
|---|---|---|---|
| Investigation on | 04/25/2014 | at | Wilmington, Delaware, United States (In Person) |

File # 290-BA-111829-302                                      Date drafted   04/28/2014

by   David F Bole

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

# Exhibit 10

# U.S. DEPARTMENT OF THE TREASURY
# OFFICE OF THE SPECIAL INSPECTOR GENERAL
# FOR THE TROUBLED ASSET RELIEF PROGRAM

## MEMORANDUM OF INVESTIGATIVE ACTIVITY

On April 24, 2014, the undersigned, along with FBI SA Greg Mrozek, met with and interviewed Jeremy J. Abelson at MidCoast Community Bank, 974 Justison Street, Wilmington, DE 19801, his place of employment. The interview began at approximately 9:25am and concluded at approximately 12.10pm.

The interview was pursuant to the ongoing criminal investigation being conducted by the Federal Bureau of Investigation (FBI); the Internal Revenue Service – Criminal Investigation (IRS-CI); the Federal Reserve Bank (FRB); and the Special Inspector General for the Troubled Asset Relief Program (SIGTARP), in conjunction with the U. S. Attorney's Office, District of Delaware, Wilmington, DE.

Abelson was advised of the identities of the interviewing agents and the purpose of the interview. He agreed to answer questions presented.



Employment:    Bank of Delaware – 1985 thru 1992 – In-House Attorney
               PNC Bank – 1992 thru 2001 – Commercial Real Estate (CRE)
               (PNC acquired Bank of DE – JJA made career change)

               Wilmington Trust Corp. – 2001 thru 2010 – CRE – (VP) Relationship Manager (WTC)

               WSFS – 2010 thru May 2011 – CRE – (VP) Relationship Manager (*)

               MidCoast Community Bank – 2011 to Present – CRE – (VP) Relationship Manager (MCCB)

(*) Abelson advised that he was fired from his position at WSFS for issues regarding his use of the corporate credit card issued to him by the bank. He stated that he had inadvertently mis-used the card for personal expenses in the amount of approximately $1,000.00. He repaid the funds and was fired from his job.

Abelson advised that after he was fired from WSFS in May 2011, he was contacted by William Latanzio, a good friend, who is an executive with MCCB and there were discussions about Abelson coming to work at MCCB. He was told by Latanzio that there were personnel moves in process and once the moves were completed, he would be hired. He believed that he was also contacted by Brian Bailey, with whom he had worked at WT, about joining MCCB.

---

Activity:  Interview of Jeremy J. Abelson

Date Prepared:  May 8, 2014
Location:  New York, NY

By:  SA John V. Barrett, Jr.   *MWR*          Case No.: I-NY-11-010

This document contains neither recommendations nor conclusions of the Department of the Treasury, Special Inspector General for the Troubled Asset Relief Program.  It is the property of the SIG and neither the document nor its contents should be disseminated without prior SIG authorization.

AGENTSRPRTS_001199

# Exhibit 11

## U.S. DEPARTMENT OF THE TREASURY
## OFFICE OF THE SPECIAL INSPECTOR GENERAL
## FOR THE TROUBLED ASSET RELIEF PROGRAM

### MEMORANDUM OF INVESTIGATIVE ACTIVITY

On July 31, 2014, the undersigned, along with Assistant United States Attorney Robert Kravetz and IRS-CI SA Anthony LoPiccolo, met with and interviewed Jeffrey Culp, former Wilmington Trust employee, at the United States Attorney's Office, Wilmington, DE. The interview began at approximately 1:05pm and concluded at approximately 2:45pm.

The interview was pursuant to the ongoing criminal investigation being conducted by the Federal Bureau of Investigation (FBI); the Internal Revenue Service – Criminal Investigation (IRS-CI); the Federal Reserve Bank (FRB); and the Special Inspector General for the Troubled Asset Relief Program (SIGTARP), in conjunction with the U. S. Attorney's Office, District of Delaware, Wilmington, DE.

Culp was advised of the identities of the interviewing individuals and the purpose of the interview. He agreed to answer questions presented.

As information, Culp had previously been interviewed by SA Bole and the undersigned on June 12, 2014 and at that time he provided his personal information.

Culp was questioned about his work history while employed at Wilmington Trust Bank and he provided the following summary.

- Joined Wilmington Trust in 1997 as part of the bank's wealth management team responsible for Pennsylvania. The bank worked towards developing relationships with wealthy business owners and looked to work with them and their family for generations as the business ownership transitioned. He was in this position for the first eight (8) or nine (9) years he was at Wilmington Trust.
- He was promoted to Chief Operating Officer (COO) in 2007 and subsequently promoted to the position of President, Wilmington Trust of Pennsylvania.

Culp advised that a number of personnel at Wilmington Trust had worked at other larger institutions prior to their employment at Wilmington Trust. He provided the following list of such individuals:

| | | |
|---|---|---|
| Bill North | K. C. Barrett | Tom Raymond |
| Gary Santos | Chen Eckart | Tim Gillespie |

He believed that a number of individuals who were not affiliated with Wilmington Trust's Delaware commercial real estate group also came from other institutions, had received various levels of training and knew the market, had been brought in to build a market for Wilmington Trust in Pennsylvania.

Culp was questioned about the perceived difference in cultures between the Delaware CRE group and the other CRE groups (PA/MD/NJ). He stated that his office had a specific role from Wilmington Trust headquarters, specifically to establish a niche for the bank in the Pennsylvania real estate market. He recalled that there was competition between the CRE groups in DE and PA which was natural. He believed that the growth by the PA group was consistent.

He recalled that his group had a much more formal approach to the process which was essentially to focus on building relationships with potential new clients. His group was to be more of an overall financial planner than a lender for their

---

Activity: Interview of Jeffrey Culp

Date Prepared: August 26, 2014
Location: New York, NY

By: SA John V. Barrett Jr.                    (initials)                    Case No.: I-NY-11-010

This document contains neither recommendations nor conclusions of the Department of the Treasury, Special Inspector General for the Troubled Asset Relief Program. It is the property of the SIG and neither the document nor its contents should be disseminated without prior SIG authorization.

AGENTSRPRTS_001588

# Exhibit 12





U.S. Attorneys » District of Delaware » News

**Department of Justice**

U.S. Attorney's Office

District of Delaware

FOR IMMEDIATE RELEASE                              Wednesday, May 6, 2015

# Former Chief Credit Officer And Former Controller Of Wilmington Trust Indicted For False Statements

WILMINGTON, Del. – William North, the former Chief Credit Officer and Kevyn Rakowski, the former Controller, of Wilmington Trust, were indicted today for their respective roles in making false statements to agencies of the United States government.  The charges include one count of making false statements to the Securities and Exchange Commission (SEC), and three counts of making false statements to Federal Reserve.  The charges stem from North's and Rakowski's involvement in concealing from the market and the Federal Reserve the total quantity of past due loans on the bank's books during October and November 2009.

Wilmington Trust was required to report in its quarterly filings with both the SEC and the Federal Reserve the quantity of its loans for which payment was past due for 90 days or more.  Investors and banking regulators consider the 90-day number in evaluating the health of a bank's loan portfolio.  According to the Indictment, North, age 55, of Bryn Mawr, Pennsylvania, and Rakowski, age 61, of Lakewood Ranch, Florida, helped conceal the truth about the quality of Wilmington Trust's loan portfolio from the investing public and from the bank's regulators.

Notwithstanding these reporting requirements and the value of this metric to investors and regulators, North and Rakowski participated in Wilmington Trust's failure to include in its reporting a material quantity of past due loans.  North, as the bank's Chief Credit Officer, approved the exclusion or "waiver" of such loans from internal reports that he knew would be used to generate the bank's external financial reports.  Rakowski, as Controller, approved the bank's filings with the SEC and the Federal Reserve knowing that those reports did not include past due loans that had been "waived."

In November 2010, Wilmington Trust was acquired by another bank at a discount of approximately 46% from the bank's share price the prior trading day.

In announcing the Indictment, United States Attorney for the District of Delaware Charles M. Oberly, III, stated, "This Indictment represents another significant step forward in holding accountable those individuals whose criminal conduct contributed to the decline of Wilmington Trust.  As the Chief Credit Officer and Controller of Wilmington Trust, North and Rakowski knew that the false information being provided to the Bank's regulators and shareholders masked the true condition of its loan portfolio.  Their respective roles in compiling and providing this false information to regulators during the Fall of 2009 are addressed in the Indictment returned today by the Grand Jury."

"We are committed to holding accountable wrongdoers whose fraudulent actions impact the safety and soundness of financial institutions regulated by the Federal Reserve Board," said Mark Bialek, Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau.

"Bankers across our nation faced rising past due loans during the financial crisis, but not all made a choice to hide the bad loans from shareholders and regulators like these two former Wilmington Trust officers are alleged to have done," said Christy Romero, Special Inspector General for TARP (SIGTARP).  We commend United States Attorney Charles Oberly and our law enforcement partners for standing firm with SIGTARP to combat TARP-related crime."

"Today's indictment of William North and Kevyn Rakowski sends a strong message that individuals who engage in this type of financial fraud will not go undetected" said Akeia Conner, Special Agent In Charge, IRS Criminal Investigation. "The IRS is proud to share its financial investigative expertise in this and other increasingly sophisticated financial investigations. We will continue to work with our law enforcement partners to bring this investigation to a thorough and complete conclusion."

The case is being investigated by the Federal Bureau of Investigation, the Department of Treasury's Special Inspector General for the Troubled Asset Relief Program, the Internal Revenue Service's Criminal Investigative Division, and the Office of Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau.  The Securities and Exchange Commission has also contributed to the investigation. The case is being prosecuted by Assistant U.S. Attorneys Robert Kravetz and Lesley Wolf of the District of Delaware.

The charges contained in an indictment are merely accusations, and a defendant is presumed innocent unless and until proven guilty.

---

USAO - Delaware

Updated July 14, 2015

# Exhibit 13

# Press Release

## SEC Charges Four Former Officers of Delaware Bank Holding Company With Disclosure Fraud

**FOR IMMEDIATE RELEASE**
**2015-81**

*Washington D.C., May 6, 2015* — The Securities and Exchange Commission today filed fraud charges against four former officers of Wilmington Trust for intentionally understating past due bank loans during the financial crisis.  The former Delaware-based bank holding company was acquired by M&T Bank in May 2011 and paid $18.5 million in September 2014 to settle related SEC charges of improper accounting and disclosure fraud.

The SEC's complaint, filed in federal district court in Wilmington, Delaware, alleges the four took part in a scheme to mask the impact of real estate market declines on the bank's portfolio of commercial real estate loans.  According to the SEC's complaint, the former officials improperly excluded hundreds of millions of dollars of past due real estate loans from financial reports filed by Wilmington Trust in 2009 and 2010, violating a requirement to fully disclose the amount of loans 90 or more days past due.

"Corporate officials bear important responsibility for ensuring that corporate filings provide the investing public with accurate information about the company's financial condition.  We allege these defendants doctored a key financial metric to make it appear to investors that the bank was financially sound, when the reality was quite the contrary," said Andrew M. Calamari, Director of the SEC's New York Regional Office.

The complaint names the bank's former Chief Financial Officer David R. Gibson, former Chief Operating Officer and President Robert V.A. Harra, former Controller Kevyn N. Rakowski, and former Chief Credit Officer William B. North.  The complaint alleges that Gibson, Rakowski, and North omitted approximately $351 million of matured loans 90 days or more past due from Wilmington Trust's disclosures in the third quarter of 2009, so that the bank disclosed only $38.7 million of such loans.  The four former officials allegedly omitted approximately $330.2 million of these loans in the fourth quarter of 2009, so that the bank's annual report disclosed just $30.6 million in matured loans 90 days or more past due.

In addition, the complaint alleges that Gibson, Rakowski and North schemed to materially misreport this category of past due loans in the first half of 2010.  Gibson also is alleged to have materially understated the amount of non-accruing loans in Wilmington Trust's portfolio in the third quarter of 2009 and the bank's loan loss provision and allowance for loan losses in the fourth quarter of 2009.  Gibson, Harra, Rakowski and North are each charged with violating or aiding and abetting violations of the antifraud provisions of the federal securities laws.  Each also is charged with aiding and abetting violations of the reporting, recordkeeping, and internal controls provision of the federal securities laws.  The SEC is seeking to have all four return allegedly ill-gotten gains with interest and pay civil monetary penalties, and to have Gibson and Harra barred from serving as corporate officers or directors.

In a related action, the U.S. Attorney's Office for the District of Delaware today announced criminal charges against Rakowski and North.

The SEC's investigation has been conducted by Margaret Spillane, James Addison, and Thomas P. Smith, Jr. of the New York Regional Office.  Jack Kaufman and Ms. Spillane will lead the SEC's litigation. The SEC appreciates the assistance of the U. S. Attorney's Office for the District of Delaware, Federal Bureau of Investigation, Federal Reserve, and Office of the Special Inspector General for the Troubled Asset Relief Program.

###

## Related Materials

- SEC complaint

# Exhibit 14

## Press Release

# SEC Charges Bank Holding Company in Delaware with Improper Accounting and Disclosure of Past Due Loans

**FOR IMMEDIATE RELEASE**
**2014-192**

*Washington D.C., Sept. 11, 2014* — The Securities and Exchange Commission today announced accounting and disclosure fraud charges against a Delaware-based bank holding company for failing to report the true volume of its loans at least 90 days past due as they substantially increased in number during the financial crisis.

An SEC investigation found that as the real estate market declined in 2009 and 2010 and its construction loans began to mature without repayment or completion of the underlying project, Wilmington Trust Company did not renew, extend, or take other appropriate action for 90 days or more on a material amount of its matured loans.  Instead of fully and accurately disclosing the amount of these accruing loans as required by accounting guidance, Wilmington Trust improperly excluded the matured loans from its public financial reporting.

Wilmington Trust, which was acquired by M&T Bank in May 2011, has agreed to pay $18.5 million in disgorgement and prejudgment interest to settle the SEC's charges.

"Improper application of accounting principles by Wilmington Trust had the effect of misleading investors about a key credit quality metric during a time of significant upheaval and financial distress for the bank," said Andrew J. Ceresney, director of the SEC's Division of Enforcement.  "Investors must know when banking institutions are unable to recover on material amounts of outstanding loans, which means those institutions must carefully adhere to relevant accounting rules."

Andrew M. Calamari, Director of the SEC's New York Regional Office, added, "By failing to fully disclose the actual volume of accruing loans past due 90 days or more, Wilmington Trust prevented investors from learning the full scope of the troubles in its commercial real estate loan portfolio."

According to the SEC's order instituting a settled administrative proceeding, Wilmington Trust omitted from its disclosures in the third and fourth quarters of 2009 approximately $338.9 million and $330.2 million, respectively, in matured loans 90 days or more past due.  Instead, it disclosed just $38.7 million in such loans for the third quarter and only $30.6 million in its annual report following the fourth quarter. Wilmington Trust also materially misreported this category of loans in the first and second quarters of 2010.  Furthermore, Wilmington Trust failed to accurately disclose during the second half of 2009 the amount of non-accruing loans in its portfolio, and materially understated its loan loss provision and allowance for loan losses during this same period.

Wilmington Trust consented to the entry of the order finding that it violated Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 as well as the reporting, books and records, and internal controls provisions of the federal securities laws.  In addition to the monetary sanctions, Wilmington Trust agreed to cease and desist from committing or causing any violations and any future violations of these provisions.

The SEC's investigation, which is continuing, has been conducted by Margaret Spillane, James Addison, and Michael Osnato of the New York Regional Office.  The SEC appreciates the assistance of the U. S. Attorney's Office for the District of Delaware, Federal Bureau of Investigation, Federal Reserve, and Office of the Special Inspector General for the Troubled Asset Relief Program.

### 

## Related Materials

- SEC order

# Exhibit 15





THE UNITED STATES ATTORNEY'S OFFICE

DISTRICT *of* DELAWARE

U.S. Attorneys » District of Delaware » News

**Department of Justice**

U.S. Attorney's Office

District of Delaware

FOR IMMEDIATE RELEASE                    Wednesday, August 5, 2015

# Former Executives of Wilmington Trust Indicted for Conspiracy and False Statements

WILMINGTON, Del. – Robert V.A. Harra, age 66, of Wilmington, David Gibson, age 58, of Wilmington, William North, age 55 of Bryn Mawr, Pennsylvania, and Kevyn Rakowski, age 61, of Lakewood Ranch, Florida, were indicted today for their respective roles in concealing from the Federal Reserve, the Securities and Exchange Commission (SEC) and the investing public the total quantity of past due loans on Wilmington Trust's books from October 2009 until November 2010.  The Nineteen-Count Superseding Indictment charges defendants with making false statements in securities filings and to agencies of the United States government.

All defendants are charged with conspiracy to defraud the United States, to commit fraud in connection with the purchase and sale of securities, and making false statements to regulators (18 U.S.C. § 371).  All defendants are charged with one count of false statements in connection with the purchase or sale of securities (18 U.S.C. § 1348), four counts of making false entries in banking records (18 U.S.C. § 1005), seven counts of making false statements to agencies of the United States government (18 U.S.C. § 1001), and two counts of making false statements in SEC reports (15 U.S.C. §§ 78m(a) and 78ff).  Harra and Gibson are also charged with two additional counts of making false statements in SEC reports and Gibson is charged with three counts of falsely certifying financial reports (18 U.S.C. § 1348).  North and Rakowski were previously charged with two counts of making false statements to an agency of the United States, relating to the concealment from the market and the Federal Reserve the total quantity of past due loans on the bank's books during the months of October and November 2009.

Wilmington Trust was required to report in its quarterly filings with both the SEC and the Federal Reserve the quantity of its loans for which payment was past due for 90 days or more. Investors and banking regulators consider the 90-day number in evaluating the health of a bank's loan portfolio.  According to the Superseding Indictment, Harra, Gibson, North, and Rakowski helped

conceal the truth about the health of Wilmington Trust's loan portfolio from the SEC, the investing public and from the bank's regulators.

The Superseding Indictment alleges that Harra, Gibson, North, and Rakowski participated in Wilmington Trust's failure to include in its reporting a material quantity of past due loans, despite the reporting requirements and knowing the significance of past due loan volume to investors and regulators.  North, as the bank's Chief Credit Officer, approved the exclusion or "waiver" of such loans from internal reports that he knew would be used to generate the bank's external financial reports.  As the bank's President and Head of Regional Banking, Harra encouraged the "waiver" of past due loans.  He served as a primary point of contact with the bank's regulators during 2009 and 2010, signed bank regulatory filings, participated in quarterly earnings calls with investors, and did not disclose the bank's failure to report "waived" loans.  The Chief Financial Officer, Gibson, also knew the bank had "waived" loans from public reporting and failed to disclose this. Despite this knowledge, Gibson helped to draft and approved SEC filings and certified that those same filings fairly presented the financial condition of Wilmington Trust.  Rakowski, as Controller, approved the bank's filings with the SEC and the Federal Reserve knowing that those reports did not include past due loans that had been "waived."

In November 2010, Wilmington Trust was acquired by another bank at a discount of approximately 46% from the bank's share price the prior trading day.

In announcing the Superseding Indictment, United States Attorney for the District of Delaware Charles M. Oberly, III, stated, "This Superseding Indictment marks the next significant step in our investigation into the illegal conduct by at Wilmington Trust.  The failure by these individuals to properly inform regulators and investors about the true financial condition of Wilmington Trust resulted in significant harm to those investors and losses to the Delaware community.  As high-ranking bank executives, these individuals had an obligation to accurately report important financial metrics which enable investors to make informed decisions.  Even in the wake of the financial crisis, their deception was neither permissible nor excusable."

"The deception explained in this indictment shows the defendants set out to hide information from the federal government.  The men and women named in this case not only hid financial details from regulators but from the general public and investors," said acting Special Agent in Charge Scott Hinckley of the FBI in Delaware.  "These aren't victimless crimes and those who committed them will be held accountable."

"The criminal charges filed today allege that four senior executives of a TARP bank did not want to face the consequences of telling the truth about past due loans on the bank's books, and in reporting to regulators, investors and shareholders," said Christy Romero, Special Inspector General for TARP (SIGTARP).  "These TARP bankers allegedly engaged in a practice of waiving past-due loans from their external reports, and making mass extensions of past-due loans with limited – if any – underwriting and many lacking updated appraisals.  In 2008 Treasury, on behalf of American taxpayers, invested $330 million in TARP bailout funds in Wilmington Trust. In 2010, the bank then turned to the market to raise capital using its falsely reported past due numbers. The bank was then sold at a severe discount, roughly half its discount from the prior day. Bankers across the nation were faced with declining economic conditions and rising past-due loans, and told the truth about those loans and losses.  Bankers at Wilmington Trust did not.  We

commend United States Attorney Charles Oberly, III and our law enforcement partners for standing firm with SIGTARP to combat TARP-related crime."

"Bank executives hold positions of trust not only within their banks but also in the eyes of the public. That trust is broken when such executives abuse their power and commit crimes. This latest indictment should serve as a continued warning to anyone who is contemplating similar financial fraud, that their illegal activity will not go unnoticed" said Akeia Conner, Special Agent In Charge, IRS Criminal Investigation.

"Today's indictment sends a clear message that bank executives who engage in fraud to deceive regulators and the public will be held accountable for their actions," said Mark Bialek, Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau.The case is being investigated by the Federal Bureau of Investigation, the Department of Treasury's Special Inspector General for the Troubled Asset Relief Program, the Internal Revenue Service's Criminal Investigative Division, and the Office of Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau. The Securities and Exchange Commission has also contributed to the investigation. The case is being prosecuted by Assistant U.S. Attorneys Robert Kravetz and Lesley Wolf of the District of Delaware.

The charges contained in an indictment are merely accusations, and a defendant is presumed innocent unless and until proven guilty.

---

USAO - Delaware

**Topic:**
Financial Fraud

Download harra_-_et_al_indictment.pdf

Updated August 5, 2015