IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST CORPORATION,<br>DAVID R. GIBSON, ROBERT V.A.<br>HARRA, WILLIAM B. NORTH, and<br>KEVYN N. RAKOWSKI,<br><br>Defendants. | Criminal Action No. 15-23-RGA |

MEMORANDUM ORDER

Presently before the Court is Defendant Wilmington Trust's Motion to Compel (D.I. 154), which the individual Defendants have joined. (D.I. 159 at 1). Defendants' motion asks the Court to "order the government to expand the scope of its review under Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), to includes the files of [the Board of Governors of the Federal Reserve System and the Federal Reserve Banks] and the [Securities and Exchange Commission]." (D.I. 154). The motion is fully briefed. (D.I. 155, 160, 165). The Court heard oral argument on May 18, 2016. (D.I. 197). For the reasons that follow, the Court will deny the motion as currently presented.

This case involves independent, but at times overlapping, inquiries into the activities of Wilmington Trust by federal regulators and law enforcement personnel. In February 2011, the United States Attorney's Office for the District of Delaware ("USAO") initiated a long-term grand jury investigation regarding potential criminal conduct of Wilmington Trust and its employees. (D.I. 160 at 2). At the beginning of the investigation, the federal agencies that were

1

involved included the Federal Bureau of Investigation ("FBI"), the Internal Revenue Service-Criminal Investigations Division ("IRS-CI"), and the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"). (*Id.*). Prior to the USAO opening an investigation, the Securities and Exchange Commission ("SEC") had previously opened its own investigation into whether Wilmington Trust made false statements in its SEC filings. (*Id.* at 3). After learning of this parallel investigation, the USAO sought and received—pursuant to an access request issued on March 18, 2011—documents from the SEC that had previously been subpoenaed by the SEC from Wilmington Trust and other third parties. (*Id.*). The SEC also later "participated with the USAO in approximately 29 of the more than 300 witness interviews conducted in connection with the USAO's case." (*Id.*). The SEC announced a settlement agreement with Wilmington Trust on September 11, 2014, and later filed a civil action against the individual Defendants. (*Id.*). The Government indicates that it has produced to Defendants all the documents it received from the SEC pursuant to the access requests and agreed to review and produce any exculpatory information contained in the notes or reports of any jointly conducted interviews. (*Id.*).

In June 2011, the USAO issued an initial grand jury subpoena to the Board of Governors of the Federal Reserve System and the Federal Reserve Banks ("the Fed"). (*Id.* at 4). In December 2011, the Office of the Inspector General for the Board of Governors of the Federal Reserve System ("Fed-OIG") became involved in the criminal investigation. (*Id.*). The Government indicates that "[w]hile originally several Fed-OIG special agents were assigned to the matter, by early 2012 only one remained directly involved in the investigation." (*Id.* at 4 n. 3). Between February 2012 and September 2013 the USAO issued four additional subpoenas to the Fed. (*Id.* at 4). The Government represents that "[a]ll of the documents produced in response to these subpoenas have been produced to defendants." (*Id.*). In August 2013, this

2

Court granted the USAO's request to disclose grand jury information to the Fed, and the USAO subsequently shared grand jury information with the Fed. (*Id.* at 4–5). Fed attorneys also sat in on "approximately 6 of the more than 300 interviews conducted in the case." (*Id.* at 5).

"Under *Brady v. Maryland,* 373 U.S. [83, 87 (1963)], the prosecution's suppression of evidence favorable to a criminal defendant violates due process when the evidence is material to guilt or punishment." *United States v. Risha,* 445 F.3d 298, 303 (3d Cir. 2006). "To establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Id.* Whether evidence is being suppressed, the relevant question here, requires an inquiry into whether the Government has constructive possession of the evidence. *See id.* ("There is no question that the government's duty to disclose under *Brady* reaches beyond evidence in the prosecutor's actual possession. . . . [P]rosecutors have a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case . . . ." (internal quotation marks omitted)). In *Risha,* the Third Circuit outlined the following factors for courts to consider in determining whether the prosecution has constructive knowledge of evidence held by other investigative agencies:

> (1) whether the party with knowledge of the information is acting on the government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.

*Id.* at 304.[1] Federal Rule of Criminal Procedure 16 likewise requires the Government to produce documents and other tangible evidence "if the item is within the government's possession,

---

[1] In *Risha,* the other investigative agency was non-federal. *See Risha,* 445 F.3d at 301–02. Nevertheless, the same sort of analysis applies here. *See, e.g., United States v. Rigas,* 779 F. Supp. 2d 408, 414–15 (M.D. Pa. 2011) (applying *Risha* factors in considering whether Government had constructive possession of certain documents held by the SEC and a United States Postal Inspector).

3

custody, or control and: (i) the item is material to preparing the defense . . . ." FED. R. CRIM. P. 16(a)(1)(E).

No evidence currently before the Court suggests that the SEC or the Fed were in any way acting on directives from or under the control of the USAO in pursuing their own regulatory and enforcement objectives related to Wilmington Trust. Accordingly, the first *Risha* factor counsels against a finding of constructive possession. The inquiry therefore turns on the extent to which the USAO engaged in a joint investigation, including joint fact-gathering, with the Fed and the SEC and the extent to which the USAO has ready access to those agencies' documents. *See United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008) ("[A] federal prosecutor is charged with knowledge of information possessed by other agents of the federal government when those agents are a part of a 'prosecution team,' which includes federal personnel involved in the investigation as well as the prosecution of a case."). "The key to the analysis [] is the level of involvement between the United States Attorney's Office and the other agencies." *United States v. Upton*, 856 F. Supp. 727, 749 (E.D.N.Y. 1994). "[W]hether parallel investigations are also 'joint' investigations must be evaluated in light of the disclosures being requested, and when it comes to *Brady* disclosures, the relevant context is one of fact-gathering, not charging determinations or otherwise." *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012). Where prosecutors and federal agencies choose to engage in some joint fact-gathering efforts, despite running parallel investigations, it "does not mean that all of the documents the [agency] prepare[s] and accumulate[s] in its investigation . . . are part of the joint investigation." *Id.* at 494–95. Instead, only documents "arising from those joint efforts" are rightly considered within the prosecutor's constructive possession. *Id.*

4

The Government takes the position that it need not search and produce documents in the possession of the Fed and the SEC that it has not already received and produced because it is not in constructive possession of those documents, nor are those agencies part of the prosecution team in this case. (D.I. 160 at 6–20). Defendants characterize their motion as asking the "Court to resolve one fundamental, threshold issue now—where the government must search for documents and information in order to comply with its obligations under Rule 16 and *Brady*." (D.I. 155 at 7–8). With regard to Rule 16, Defendants argue that the Government must produce documents from the Fed and the SEC because the Government has a legal right to obtain them from the Fed, through Fed-OIG's statutory right to access Fed documents, and both agencies are allied with the prosecution. (*Id.* at 8–10). With regard to the Government's *Brady* obligations, Defendants essentially argue that because the USAO is in constructive possession of documents held by the Fed and the SEC, these agencies' documents must be sought out and produced under the factors set forth by the Third Circuit in *Risha*. (*Id.* at 10–18).

While I appreciate the parties' efforts to streamline the matter before the Court by presenting it as a broad, threshold issue, it prevents me from being able to evaluate whether the parallel investigations are joint investigations "in light of the disclosures being requested," as the case law suggests. *See, e.g.*, *Gupta*, 848 F. Supp. 2d at 494. The cases cited by each side, including *Risha*, involve after-the-fact inquiries considering whether specific, discrete pieces of evidence—or at least well-defined categories of evidence—implicated a defendant's *Brady* rights or were otherwise constructively possessed by prosecutors. *See, e.g.*, *Risha*, 445 F.3d at 299–306 (considering whether *Brady* violation occurred where defense counsel was unaware that prosecution's key witness expected and received a favorable plea agreement on unrelated state charges in exchange for testifying); *United States v. Merlino*, 349 F.3d 144, 153–55 (3d Cir.

5

2003) (assessing whether Government violated Defendant's *Brady* rights by failing to turn over "audio tapes of the telephone conversations of certain cooperating government witnesses maintained by the federal Bureau of Prisons"); *United States v. Perdomo*, 929 F.2d 967, 969–70 (3d Cir. 1991) (considering whether Government's "failure to provide Defendant with information regarding [a] government informant's prior criminal record constituted a violation of his right to due process under *Brady*").

Here, there are no requests for specific pieces or types of evidence with which to assess *Brady* claims. While the record before the Court suggests some cooperation between the USAO and both the SEC and the Fed, it also demonstrates that the SEC and the Fed are not formally a part of the prosecution team and are conducting separate, parallel investigations.[2] In such scenarios, whether one investigative body's evidence can be imputed to another depends upon the extent to which the investigations were jointly conducted with regard to the specific disclosures being requested. *See United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012). In *Gupta*, for instance, the court held that the USAO had an obligation to review documents for *Brady* material arising from joint witness interviews it conducted with the SEC, as well as any other joint efforts, but did not impute knowledge of the SEC's entire parallel investigation of the Defendant onto the USAO. *See id.* at 495 ("This does not mean that all of the documents the SEC prepared and accumulated in its investigation of Gupta are part of the joint investigation."). I think the approach undertaken by the Court in *Gupta* properly reflects

---

[2] The entire Fed is not a member of the prosecution team merely because of the involvement of a small number of Fed-OIG special agents. In fact, the Third Circuit has rejected attempts to categorize an entire federal agency as part of the prosecution team even where some employees of that agency were part of the prosecution team. *See United States v. Pelullo*, 399 F.3d 197, 216–18 (3d Cir. 2005). In *Pelullo*, the Third Circuit held that the Pension and Welfare Benefits Administration ("PWBA"), a division of the Department of Labor ("DOL"), was not a part of the prosecution team even though there was "no question that certain DOL agents were integral members of the prosecution team." *Id.* The Court explained, "that other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team." *Id.* at 218.

6

the fact that parallel investigations in cases of this size and complexity may converge and be considered "joint" with regard to certain disclosures, but can also be entirely independent with regard to other fact-finding efforts. Such an approach sensibly protects Defendants' rights under *Brady*, without turning *Brady* into a tool that requires prosecutors to go on paralyzing, cross-agency fishing expeditions for exculpatory evidence.

Accordingly, as the parties have presented the issue, I decline to broadly declare that the USAO is in constructive possession of all documents held by the Fed and the SEC relating to Wilmington Trust. I think that doing so would considerably overstate the USAO's interaction with these other agencies—at least on the record presently before the Court—and would amplify the USAO's discovery obligations beyond what is required, especially in a case of this scope and complexity. This result is also supported by the Third Circuit's third *Risha* factor, whether the entity charged with constructive possession has "ready access" to information. In a complex, document-intensive case, to broadly hold that the USAO has "ready access" to all documents from parallel investigations conducted by various federal regulators would turn the term "ready access" on its head. Accordingly, the USAO should only be charged with constructive possession of documents and information that reflect any joint efforts it actually undertook with the Fed and the SEC, which appear to be relatively modest.

Likewise, for purposes of Rule 16, the fact that multiple investigative bodies jointly engaged in some fact-gathering activity in otherwise separate investigations does not render the entire scope of each investigation within the constructive knowledge of the USAO. The record reflects that the USAO has obtained documents from both the SEC and the Fed only through access requests and grand jury subpoenas. The SEC investigation of Wilmington Trust predated the USAO's investigation and has demonstrably run a separate course, highlighted by the SEC's

7

settlement with Wilmington Trust. With regard to the Fed, federal regulations require law enforcement agencies to file formal written requests in order to obtain "reports of examination and inspection, confidential supervisory information, and other confidential documents and information of the Board concerning banks . . . ." 12 C.F.R. § 261.21. In doing so, law enforcement personnel must write to the Fed's General Counsel specifying, among other requirements, the particular information sought, reasons why the "information cannot be obtained from the examined institution in question rather than from the Board," and "a statement of the law enforcement purpose" for the request. *Id.* § 261.21(c)(1)–(3). The USAO has only obtained information from the Fed pursuant to requests under this specific regulatory scheme. Even if the USAO could conceivably obtain all documents from the Fed relating to Wilmington Trust, it would not change the constructive possession analysis:

> The mere fact that documents may be obtainable is insufficient to establish constructive possession. Without a showing that evidence is possessed by people engaged in the investigation or prosecution of the case, we have declined to hold that the evidence was constructively possessed by federal prosecutors, despite its being in the possession of another agent of the federal government and therefore presumably obtainable.

*United States v. Reyeros*, 537 F.3d 270, 284 (3d Cir. 2008). Accordingly, the record presently before the Court does not establish that the USAO should be considered in constructive possession of all documents held by the Fed.[3]

Here, the USAO advises that it has complied with the directives set forth in *Gupta* and Defendants do not suggest otherwise. The USAO has produced to Defendants all documents that

---

[3] Defendants make too much of the fact that the Fed-OIG has a right under the Inspector General Act to access documents and records of the Fed. 5 U.S.C. App. 3, § 6(a)(1). First, the USAO has not obtained any documents from the Fed-OIG in this manner. It has only obtained Fed documents via requests under the required regulatory scheme. Second, this general grant of rights to Inspector General Offices does not demonstrate that the Fed-OIG can freely share confidential Fed information with law enforcement without consequence. If it did, it would severely undercut the specific federal regulations requiring that several particularized requirements be met before such information can be shared with law enforcement. 12 C.F.R. § 261.21(c).

8

it actually received from both the SEC and the Fed pursuant to access requests and grand jury subpoenas. It has also agreed to review and produce any exculpatory information contained in the notes and reports from any witness interviews that were jointly conducted with the SEC or the Fed. On the record presently before the Court, the Government is meeting its discovery obligations. That being said, Defendants are not foreclosed from bringing more specific, targeted motions to compel. Defendants' explanation at oral argument of some of the allegedly outstanding documents leaves open the possibility that I could grant future motions to compel directed at specific information or custodians, especially where supported by more factual background. Yet the Defendants presently seek an order requiring the Government to produce, under the auspices of Rule 16 and *Brady*, all information in the possession of two federal agencies who are conducting separate, parallel investigations of Wilmington Trust. The Court declines to grant such sweeping relief.

The motion to compel (D.I. 154) is **DENIED**.

It is SO ORDERED this 11 day of July, 2016.

                                                           United States District Judge