# Exhibit 2

1    that.

2            MR. ROMERO:   So there's going to be headlines.

3    I can answer the Court's factual questions.

4            THE COURT:   One of the things I was wondering

5    about and something one of the defense counsel said, or

6    Mr. Wood said actually was, you know, slides for the opening

7    statements were being passed around yesterday afternoon.

8    My question is, because I assume it's the case that Williams

9    & Connolly probably has immense quantities of work product

10   outlining how they're going to cross-examine all of these

11   witnesses and how you're going to do direct examinations of

12   all of these witnesses and experts.

13           Is that something that gets shared with the

14   defense counsel, either has been, or will be, or is that

15   something that when you're out of the case, it goes with

16   you?

17           MR. ROMERO:   Well, there's -- I guess there's

18   two ways I can answer that question.

19           Okay.   So there is an agreement that would

20   prevent us from, you know, disclosing certain things that

21   we've done with the defendant.   Okay.   I can say that there

22   was a relatively -- we certainly shared information and work

23   product with them up until the time the agreement was

24   signed.   There are provisions in the agreement, I can't say

25   we share all of our work product.   There are provisions in

1    the agreement that the Government can tell you how they

2    interpret those provisions, but there is a cooperation

3    provision in the agreement that says the bank basically

4    can't provide support to the defendants.

5              THE COURT:  All right.  Well, that's will

6    helpful.

7              So what I was trying to get at, and --

8              MR. ROMERO:  But I can give you an example.

9              THE COURT:  Okay.  Go ahead, yes.

10             MR. ROMERO:  Because the Court had a question.

11   I can't go into things that are privileged.  Okay?

12             THE COURT:  Yes.

13             MR. ROMERO:  But to try to answer the Court's

14   question, the amount of time that I put into preparing the

15   cross-examination of Joe Terranova, and not just the time

16   that I put in, but literally a team of people putting

17   together that information and not just organizing it, but

18   actually understanding it and knowing what to do and knowing

19   what not to do was months of my time with lots of people

20   supporting me.

21             So I can't speak to what the individual

22   defendants have been doing.  I don't know.  I don't know

23   what they've been doing independently.  But I can tell you

24   in terms of preparing for any case I've ever been involved

25   with, this is the most massive case by far and I'm about

1    ready to pass out right now.  Okay.  And the trial didn't

2    start.

3              THE COURT:  And so, Mr. Romero, tell me if this

4    is privileged and we won't go any further, but all of this

5    preparation that you did for Mr. Terranova, I'm not

6    obviously asking the substance, but how much of that has

7    already been shared?

8              MR. ROMERO:  No one was involved from the

9    defendants, with this team in preparing the work that had to

10   get done to get ready for it.  I can't talk about -- and, by

11   the way, I want to be careful here.  I want to make sure the

12   Government doesn't think I'm doing anything that would

13   breach the agreement because we're a party to the case

14   still.  The Court is asking questions.

15             So before I go any further, I want to see if the

16   Government says I'm breaching the agreement even by saying

17   the things, because -- that I'm doing.

18             MR. KRAVETZ:  I don't believe so by answering

19   the questions from the Court.  I think Mr. Romero is

20   correct, that as the agreement is structured and it will be

21   a public agreement, that the bank is not permitted to share

22   any further information.

23             THE COURT:  Well, no, and I got that.  I was

24   wondering, so, for example, I don't know who the witnesses

25   were supposed to be tomorrow.  And this is changing topics

1  that I am sure that Terranova was not one of them, or at

2  least that would be my assumption.

3          The witnesses who were scheduled for tomorrow,

4  do the other defendants already have something from you as

5  to how you were going to cross-examine them, because imaging

6  that the way the defense counsel are speaking about how they

7  were going to follow on and make sure you plowed the snow

8  and all of that, they weren't going to be doing it when you

9  sit down and say, gee, he left Main Street unplowed.  I have

10  to go there.  I mean, they were going to know what you were

11  going to be, what you planned to cover, didn't they, before

12  you started?

13          MR. ROMERO:  So I can't -- I really can't go

14  into all of those issues, Your Honor.

15          THE COURT:  Okay.  All right.  All right.

16          MR. ROMERO:  But I can tell you this.  One thing

17  that cannot be replaced is the 4,000 hours of work that's in

18  my head.

19          THE COURT:  And I can understand that.

20          MR. WOOD:  Your Honor, if I might add, this

21  might prompt additional questions.  I probably should have

22  said this earlier.  There are documents that are absolutely

23  essential to the presentation of a constitutionally

24  effective defense that are bank documents that are in the

25  possession of the bank that we have not seen.  One of the

1    I have not looked at my calendar, so we can discuss a date

2    in a little while.

3            I did look at the agreement that Mr. Kravetz

4    gave me and the paragraph that Mr. Romero and he were

5    talking about talks about Wilmington Trust not providing any

6    support to the individual defendants, which I took to be

7    essentially not volunteering information and certainly not

8    sharing any of their work product.  So whatever it is that

9    the Wilmington Trust Company has in counsel's file is going

10   to stay in counsel's files.  I'm pretty sure about that.

11           And so I guess that leaves as an immediate

12   question, I have these 58 jurors that we spent a week

13   selecting.  Does anybody have any thoughts about what we

14   should do about them?

15           MR. DALTON:  Send them home.

16           THE COURT:  Well, that's a good thought,

17   Mr. Dalton.  I guess what I was wondering --

18           MR. DALTON:  I'm sorry.  I don't have anything

19   else other than that.  I wish I did.

20           THE COURT:  So I guess what I was wondering is,

21   do you think I should tell them I continued the trial and

22   will be contacting them in March to see whether they're

23   still able to serve some of them won't be able to serve

24   because of one thing or another, but I'm just thinking we've

25   got 58 clear jurors, so to speak.  Rather than starting over