IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| ) | |
| v. ) | Criminal Action No. 1:15-23-RGA |
| ) | |
| DAVID R. GIBSON, ) | |
| ROBERT V.A. HARRA, ) | |
| WILLIAM NORTH, and ) | |
| KEVYN RAKOWSKI, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**WILMINGTON TRUST CORPORATION'S OPPOSITION TO GOVERNMENT'S "MOTION TO ENFORCE SETTLEMENT AGREEMENT"**

This Court has dismissed the criminal charges against Wilmington Trust Corporation ("Wilmington Trust"). But Wilmington Trust, and all of the named individual criminal defendants, remain parties to the parallel civil securities litigation captioned *In re: Wilmington Trust Securities Litigation*, No. 10-cv-00990 (D. Del.). That litigation arises from substantially the same events underlying the criminal action and involves many of the same witnesses who are expected to testify as witnesses in the criminal case. To defend itself in the civil litigation, Wilmington Trust intends to have its civil counsel attend the criminal trial and consult with counsel for the individual criminal defendants regarding the questions Wilmington Trust would like counsel to pose to the overlapping witnesses. The Settlement Agreement, upon which the government relies in its motion, permits Wilmington Trust to do just that. The Agreement expressly provides that it "***does not restrict in any manner*** the way that Wilmington Trust defends itself in any matter in which it is then a party." Ex. 1 ¶ 2.G (emphasis added). Wilmington Trust also retains the right to "defend ***as Wilmington Trust deems appropriate*** . . .

all proceedings in which it is then a party." *Id.* ¶ 15 (emphasis added). The government's motion should be denied.

## BACKGROUND

The government's summary of the Settlement Agreement's provisions ignores critical aspects of the Agreement's drafting history that are highly probative of "the intent of the contracting parties at the time of the agreement." *United Mine Workers 1974 Pension v. Pittston Co.*, 984 F.2d 469, 473 (D.C. Cir. 1993).

On October 8, 2017, the government sent counsel for Wilmington Trust a draft settlement agreement. Ex. 2 (Oct. 8, 2017 Email from Kravetz to Simon et al.); Ex. 3 (Oct. 8, 2017 draft settlement agreement). The government's draft agreement included the provisions the government focuses on in its motion requiring Wilmington Trust to "cooperate" with the government and refrain from providing support to the individual defendants in the criminal case. Ex. 3 ¶ 2, 2.B. The draft also purported to prohibit Wilmington Trust from paying legal fees incurred by the individual defendants in the criminal case unless "required by indemnification law and/or agreements." Ex. 3 ¶ 2.B.

The following day, counsel for Wilmington Trust sent the government a revised version of the draft agreement and made clear that the language proposed by the government in the cooperation section would not restrict in any manner the way that Wilmington Trust defends against the civil litigation. Ex. 4 (Oct. 9, 2017 email from Romero to Kravetz); Ex. 5 (Oct. 9, 2017 draft agreement). Wilmington Trust added a new provision ¶ 2.F at the end of the paragraph concerning "Future Cooperation and Disclosure Requirements," stating: "This Agreement does not restrict in any manner the way that Wilmington Trust defends itself in any

matter in which it is then a party." Wilmington Trust also included a number of other changes relevant here:

- Paragraph 15 in the government's draft was edited to permit Wilmington Trust to raise "any defenses, take any legal positions, assert any claims and otherwise defend as Wilmington Trust deems appropriate in all proceedings in which it is then a party."

- The government's proposed restriction on the payment of the individual defendants' legal fees was changed to allow Wilmington Trust to pay such fees as "permitted" by law or agreements, rather than only when payment was "required."

At the time Wilmington Trust made these revisions, the government was aware that Wilmington Trust and the individual criminal defendants were also defendants in the civil litigation.

In a further revision sent to counsel for Wilmington Trust later that day, the government again attempted to restrict Wilmington Trust from paying the attorneys' fees of the individual criminal defendants unless "required" to do so.  Ex. 6 (Oct. 9, 2017 email from Kravetz to Romero et al.); Ex. 7 (Oct. 9, 2017 government draft agreement) ¶ 2.B.  The government also added a provision to the cooperation requirement permitting Wilmington Trust and its officers, employees, or counsel to "provid[e] truthful testimony" in the criminal action.  But the government ***did not change in any way the carve-out from the cooperation provision added by Wilmington Trust or the language preserving Wilmington Trust's right to defend itself "as Wilmington Trust deems appropriate" in other proceedings***.

Counsel for Wilmington Trust responded to the government's proposal and explained that Wilmington Trust would not agree to the government's proposed restrictions on permissive indemnification and alerted the government to case law holding that efforts by the government to "prevent[] companies from providing employees and former employees with the financial means

to exercise their constitutional rights to defend themselves" violate Due Process. *United States v. Stein*, 435 F. Supp. 2d 330, 364 (S.D.N.Y. 2006), *aff'd*, 541 F.3d 130 (2d Cir. 2008). Counsel also explained that the government's proposed addition in ¶ 2.B regarding "truthful testimony" could be misconstrued to require unethical behavior by counsel and suggested additional language stating what should have been obvious—that Wilmington Trust's cooperation obligation would be construed "in a manner consistent with applicable law and rules." The government accepted both of these revisions, and they were subsequently incorporated into the final agreement. Ex. 1 (Executed Settlement Agreement).

## ARGUMENT

1.  Wilmington Trust's obligation to cooperate with the government under the Settlement Agreement is subject to an express carve out. The Agreement "***does not restrict in any manner*** the way that Wilmington Trust defends itself in any matter in which it is then a party." Ex. 1 ¶ 2.G (emphasis added). The Agreement also expressly reserves Wilmington Trust's right to "defend *as Wilmington Trust deems appropriate* . . . all proceedings in which it is then a party." *Id.* ¶ 15 (emphasis added).

Consistent with these provisions, Wilmington Trust has determined that its ability to defend the civil case requires that it have its civil counsel attend the criminal trial, and have its counsel discuss with counsel for its civil co-defendants the questions that Wilmington Trust would like counsel to ask during the examinations of witnesses who are likely to be witnesses in the civil case. Counsel for Wilmington Trust will not conduct any examinations themselves or exercise any control over the manner in which examinations are actually conducted. And counsel for the individual defendants will at all times remain free to reject the suggestions of Wilmington Trust's counsel—a freedom we expect they will of course exercise. The following

examples underscore why the proposed discussion of witness testimony is an appropriate manner in which to defend the civil litigation.

  a.  ***Federal Reserve Witnesses.***  In the civil case, Judge Fallon denied Wilmington Trust the right to depose employees of the Federal Reserve based on Wilmington Trust's supposed ability to obtain similar evidence during the criminal case. *See* No. 10-cv-00990, D.I. 785 ¶ 6 (concluding that Wilmington Trust's "need for the deposition testimony of the Reserve Bank employees in the civil proceeding is lessened by the fact that similar testimony by three of the same witnesses is expected in the criminal action."). Wilmington Trust appealed that order as clearly erroneous on multiple grounds, D.I. 790, but it was affirmed by Judge Robreno, D.I. 810.[1] Thus, unless Wilmington Trust is permitted to consult with counsel for the individual defendants regarding the examination of these witnesses, critical evidence from the Federal Reserve may be entirely unavailable to Wilmington Trust in the civil case at the summary judgment stage and possibly trial.

  b.  ***Witnesses Who Invoked Fifth Amendment in Civil Case.***  A number of witnesses who may testify in the criminal case refused to testify at deposition and invoked their Fifth Amendment privilege in the civil case on the grounds that the criminal case is still pending. The plaintiffs in the civil case will try to use these Fifth Amendment invocations and/or the criminal trial testimony of these witnesses against Wilmington Trust at summary judgment and trial. In addition, they may attempt to call these witnesses at the civil trial. Thus, Wilmington Trust's first and possibly only opportunity to have questions posed to these witnesses will be in the criminal case.

---

[1] Wilmington Trust has moved to have this Order modified to permit depositions in light of changed circumstances, including the fact that it is no longer a defendant in the criminal case. *See* No. 10-cv-00990, D.I. 811 (Wilmington Trust motion); D.I. 813 (Federal Reserve opposition); D.I. 816 (Wilmington Trust reply).

   c. ***Current and Former Wilmington Trust Employees.***  Many of the overlapping witnesses are present or former Wilmington Trust employees.  It is highly likely that the civil plaintiffs will attempt to attribute these employees' conduct to Wilmington Trust, and seek to admit their testimony against one or more civil defendants at trial or on summary judgment. Wilmington Trust appropriately would like to at least suggest what questions should be asked of these witnesses.

   2. The government contends that Wilmington Trust's proposed efforts to defend itself from the allegations in the civil litigation are contrary to "the parties' contemporaneous understanding of the Agreement." But as explained above, *supra* pp. 2-3, Wilmington Trust made clear during the negotiation of the Agreement that its acceptance of the cooperation obligations was dependent on the government's own agreement to allow Wilmington Trust a free hand in defending other actions, including the civil litigation.  The government never once raised an objection to these unambiguous and repeated expressions of Wilmington Trust's intent, and its belated attempt to do so now is not a basis for rewriting the terms of the Settlement Agreement.

  Even setting aside the portions of the Settlement Agreement expressly reserving Wilmington Trust's right to defend itself as it deems appropriate in the civil litigation, the cooperation provisions must still be interpreted "in a manner consistent with applicable law and rules." Ex. 1 ¶ 2. Wilmington Trust made clear to the government that it would not agree to act improperly, and that its counsel would remain free to exercise their ethical obligations faithfully. The government's reading of the Agreement contravenes that limitation by requiring counsel for Wilmington Trust to refrain from taking steps necessary and appropriate to defend the civil litigation, in violation of their ethical and professional obligations to their client.  As part of their

proper representation of a client in a situation like the present one, where there are overlapping issues and witnesses in civil and criminal litigation, any competent counsel defending the civil case would seek to discuss with counsel examining a witness in the criminal case their view about what the witness should be asked. That is all that Wilmington Trust seeks to do here.

## CONCLUSION

For the reasons provided above, the Court should deny the government's motion.

Dated: February 9, 2018

Brendan V. Sullivan, Jr.
Barry S. Simon
Margaret A. Keeley
Tobin J. Romero
Lance A. Wade
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel.: (202) 434-5000
bsullivan@wc.com
bsimon@wc.com
mkeeley@wc.com
tromero@wc.com
lwade@wc.com

*Attorneys for Defendant*
*Wilmington Trust Corporation*

Respectfully submitted,

*/s/ Matthew P. Majarian*
Matthew P. Majarian (ID No. 5696)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street
P.O. Box 636
Wilmington, Delaware 19899
Tel.: (302) 651-3000
matthew.majarian@skadden.com

Christopher J. Gunther
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel.: (212) 735-3483
cgunther@skadden.com